INZER, Justice:
This is a workmen’s compensation case. It comes to this Court on appeal by R. D. Williamson from a judgment of the Circuit Court for the First Judicial District of Hinds County affirming an order of the Workmen’s Compensation Commission. The employer, Delta Millworks, Inc., a self-insurer, cross appeals.
There is no dispute relative to the fact that claimant suffered a compensable injury arising out of and in the course of his employment with appellee. The controversy on this appeal involves the extent of the injury and the degree of permanent disability resulting therefrom. Also involved is the amount of compensation to which claimant is entitled as a result of his injury.
On March 28, 1967, claimant was employed making doors at the appellee’s plant in the City of Jackson. When the doors *185 were completed they were stacked on flats or floats to he carried away. The flats were stored lip high on the back porch. When claimant reached up to pull down one of the flats his hand hung in a broken place in the flat. The flat slipped and fell, twisting claimant’s arm and shoulder. Claimant reported the injury to his foreman, and he was sent to the company doctor, Dr. Irvin H. Cronin. Dr. Cronin examined claimant and took x-rays to determine whether there were any broken bones. Finding no broken bones, the doctor diagnosed the injury as contusions to the right elbow. He gave claimant an injection for pain and allowed him to return to work. Claimant continued to work, but continued to suffer pain and returned to Dr. Cronin several times and was given shots for pain.
On May 27, 1967, Dr. Cronin referred claimant to Dr. Thomas C. Turner, an orthopedic surgeon. Dr. Turner diagnosed claimant’s injuries as traumatic right lateral humeral epicondylitis. At that time claimant was having some discomfort in the right side of his neck. Thereafter for a period of over six months, Dr. Turner treated claimant conservatively by injections of Celestone. Although claimant continued to work during this period, he was continuing to suffer pain, and on December 20, 1967, Dr. Turner performed a partial epicondylectomy on claimant’s right elbow. Claimant was able to return to work on February 19, 1968, but continued to have pain. Dr. Turner continued to see claimant at intervals. The report shows that on May 10, he saw claimant, and at that time claimant had some numbness in the right palm and was complaining of having headaches on the right side of the head. Claimant was given a muscle relaxer and told to return to work. Dr. Turner saw claimant again on May 15 and June 7, 1968, at which time the doctor noticed some generalized decrease in sensitivity to the pin prick in the right hand, not following a specific neurological pattern. On June 7 Dr. Turner felt that claimant had recovered enough from the elbow injury to be discharged with a five percent permanent disability. Claimant continued to work, but the pain persisted in his shoulder and neck. He returned to Dr. Turner on July 5, 1968, complaining of pain in several parts of his body, most notably the right side of his neck. It was Dr. Turner’s opinion that this pain was only the result of muscle strain, and he gave claimant a muscle relaxer to ease the pain.
Claimant continued to have pain in his shoulders and neck, and on August 12, 1968, without first advising his employer of his intention to do so, he went to a doctor of his own choice, Dr. Orlando C. Andy, a neurosurgeon. Dr. Andy took a detailed history from claimant as to his injury and the treatment since the injury. He examined claimant and determined claimant should be treated conservatively. He had him admitted to the hospital on September 9, 1968, and placed in cervical traction. Claimant was discharged from the hospital on September 20, 1968. During this period Dr. Andy ran several tests. A myelogram was performed which showed no evidence of nerve root avulsion and was within normal limits with relation to discs in the cervical spine. A motor nerve conduction determination revealed no evidence of neuropathy on the right side. Dr. Andy then performed a cervical discogram which revealed ruptures at the fifth and sixth intervertebral discs. It was Dr. Andy’s opinion that the claimant should undergo an operation to excise the fifth cervical disc. Claimant did not advise the employer that he needed the operation for the removal of the disc, but returned to the hospital on October 7, 1968. At that time Dr. Andy operated on the fifth cervical disc. It was excised from the interior approach and a fusion was performed between the bodies of C-5 and C-6. This operation was primarily intended to help the fifth cervical disc, and it was the doctor’s opinion that the sixth cervical disc should be removed.
It was Dr. Andy’s opinion that without an operation on the sixth cervical inter- *186 vertebral disc, claimant reached maximum medical recovery on April 28, 1969. It was also his opinion that the trouble which resulted in the operation performed on the claimant was causally related to the injury that claimant sustained on March 12, 1967, while working' for appellee. It was his opinion that in the terms of permanent partial disability that appellant’s present disability without the suggested operation was between fifteen and twenty-five percent, but in relation to doing heavy work, it was 100 percent.
Dr. Turner testified that in his opinion claimant did not suffer any injury to his neck of sufficient severity to result in the operation by Dr. Andy and that the operation was not causally related to the injury which claimant suffered on March 12, 1967. However, he admitted that claimant did have symptoms of a ruptured C-S or C-6 disc, but the symptoms, in Dr. Turner’s opinion, were not “severe enough to make me suspect a lesion of that magnitude.” After claimant was released by Dr. Andy as having reached maximum medical recovery, he returned to appellee’s plant in Jackson to go back to work. Appellee advised him that he was not to work any longer and to stay away from the plant. Claimant then secured employment at a self-service filling station where he worked eight hours per day for seven days per week. This work does not involve any heavy lifting and consisted mainly of collecting the money after the customer placed the gasoline in his car. For this work he was paid $1.10 per hour. His average weekly wage while working for appellee eight hours per day for five days a week was $62.56.
The attorney referee found that claimant sustained an injury to his right elbow while working with lumber flats at Delta Millworks, Inc. and as a result of that injury claimant was temporarily totally disabled for sixty-six days between December 7, 1967, and February 18, 1968, and was temporarily partially disabled during the rest of such period but continued to work and lost no wages.
The attorney referee found as a result of the injury claimant was permanently partially disabled to the extent of five percent to his right arm and suffered a loss of wage earning capacity of $6 per week.
The employer was ordered to pay claimant $35 per week for nine weeks and three days beginning on December 7, 1967, and ending on February 18, 1968, and to pay claimant $4 per week for permanent partial disability beginning February 19, 1968, and continuing for 450 weeks. The attorney referee found that the employer furnished claimant medical services and supplies as required or requested, but claimant sought medical services of a doctor of his own choosing for which the employer was not liable.
On petition for review by claimant and the employer, the commission found that as a result of his injury claimant not only suffered an injury to his arm, but also suffered an injury to his neck. In all other respects it affirmed the order of the attorney referee. On appeal to the circuit court, the order of the commission was affirmed. Hence, this appeal.
The first question to be determined is whether there is substantial evidence to support the findings of the commission that the claimant suffered an injury to his neck. We are of the opinion that there is substantial evidence to support this claim. During the time that claimant was treated by Dr. Turner he continued to suffer from pain in his neck and voiced these complaints to his doctor. The last time Dr. Turner saw claimant, he was complaining of pain in his shoulder and neck, and Dr. Turner testified that the only way he could account for these symptoms was that they were the result of muscle strain. He did not give claimant any treatment for the neck, other than muscle relaxants. Although claimant continued to work from the time he recovered from the operation performed by Dr. Turner, he continued to suffer pain and continued under the care of Dr. Turner until he discharged him. *187 Thereafter, claimant continued to suffer pain in his shoulder and neck and sought the service of Dr. Andy, who discovered the ruptured disc and operated on claimant. It was Dr. Andy’s opinion that claimant did suffer injury to his neck which resulted in the ruptured discs.
The commission was correct in finding that claimant suffered an injury to his neck, but having so found it was in error in refusing to allow compensation benefits resulting from such injury. ,,Having found an'.injury to the neck the commission should have awarded claimant temporary total benefits for the period he was unable to work as a result of this injury. Claimant was hospitalized on September 9, 1968, and placed in traction and released on September 20, 1968. He was readmitted to the hospital on October 2, 1968, and underwent the operation for the removal of the disc. He was discharged on October 14, 1968, but continued under medical treatment until April 28, 1969, when he reached maximum medical recovery. During this period he was temporarily totally disabled and is entitled to temporary total benefits for this period. It is well settled that there may be successive periods of temporary total disability arising from a single injury, and if so, each period of disability is compensable. Jordan v. Arkansas Valley Industries, Inc., 241 So.2d 143 (Miss.1970); Komp Equipment Co. v. Clinton, 236 Miss. 560, 111 So.2d 259, 112 So.2d 541 (1959); Dunn, Mississippi Workmen’s Compensation § 75 (2d ed. 1967).
The commission was also in error in affirming the order of the attorney referee as to the extent of the claimant’s permanent partial disability. The attorney referee confined his findings as to permanent partial disability as to the elbow injury and did not consider the result of the neck injury. Claimant is entitled to have this injury considered by the commission in arriving at the degree of the permanent partial disability.
Claimant also contends that the commission was in error in refusing to require the employer to pay the medical expenses incurred as a result of his neck injury. The record reflects that the employer furnished medical treatment after the injury. Claimant became dissatisfied with the treatment furnished and consulted a doctor of his own choosing without advising his employer of his intention to do so. This, of course, he had a right to do under the provisions of Section 6998-08 (e), Mississippi Code 1942 Annotated (1952), which provides:
(e) An injured worker who believes that his best interest has been prejudiced by the findings of the physician designated by the employer or carrier shall have the privilege of a medical examination by a physician of his own choosing, at the expense of the carrier or employer. Such examination may be had at any time after injury and prior to the closing of the case; provided, however, that the charge shall not exceed one hundred dollars ($100.00), and shall be paid by the carrier or employer where the previous medical findings are upset, but paid by the employee if previous medical findings are confirmed.
It is clear from the findings of the commission that the examination by the physician selected by claimant upset the previous medical findings as to the extent of claimant’s disability, and the commission was in error in refusing to allow the payment for such examination not to exceed $100. Since claimant made no demand upon the employer to provide the operation found by his physician to be necessary, the employer is not liable for the cost of the operation. Dunn, Mississippi Workmen’s Compensation § 344 (2d ed. 1967).
We have examined the errors assigned on cross appeal and find them to be without merit. The points raised have been covered in this opinion and no further discussion is necessary.
For the reasons stated, the judgment of the circuit court is reversed and this case is remanded to the workmen’s compensation commission for the payment of addi *188 tional temporary total benefits in accordance with this opinion and for the determination by the commission of the degree of claimant’s permanent disability, taking into consideration the injury to his neck and the injury to his arm. The commission will also require the employer to furnish any additional medical services as the nature of his injury may require. In accordance with Section 6998-08 (e), supra, the employer will also be required to pay for the examination of claimant by Dr. Andy, not to exceed $100. In determining the degree of permanent disability both the employer and claimant should be afforded an opportunity to introduce any further evidence that may be pertinent to the issue.
Reversed on direct appeal; affirmed on cross appeal and remanded for further proceedings consistent with this opinion.
RODGERS, P. J., and JONES, BRADY, and SUGG, JJ., concur.