505 So.2d 1192 (1987)
Alfred Grant DAVIS
v.
SCOTCH PLYWOOD COMPANY OF MISSISSIPPI AND EMPLOYERS CASUALTY COMPANY.
No. 56366.
Supreme Court of Mississippi.
March 18, 1987.
*1193 Stanford Young, David Slaughter, Waynesboro, for appellant.
Brooke Ferris, Eugene M. Harlow, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the court:
Alfred Davis has filed this appeal from the circuit court of Wayne County, where the circuit judge affirmed the findings of the Mississippi Workers Compensation Commission (MWCC) regarding the denial of permanent partial disability payments for Davis' back injury. The circuit judge further found that the employer/carrier was responsible for the medical services rendered by Davis' doctor, a ruling contested by the employer/carrier on cross-appeal.
Davis also appeals the decision of the circuit judge in affirming the Commission's decision not to reopen the hearing after additional evidence was discovered by Davis.
We affirm the denial of permanent partial disability payments, but we find Davis' temporary total disability payments should not have been cut off by the Administrative Judge. We further hold the employer/carrier is not responsible for the medical services of Davis' doctor. We also affirm the circuit judge regarding MWCC's refusal to reopen the hearing.

FACTS
Alfred Davis was injured on April 28, 1982, in the course of his employment with Scotch Plywood Company (SPC) in Waynesboro. While stacking plywood on a buggy, Davis felt a catch in the bottom part of his back.
Davis first went to see his family doctor, Dr. Wood, who referred him to Dr. Ralph Wicker, a Hattiesburg neurosurgeon. On May 4 Dr. Wicker ran standard tests on Davis and found his nerves were intact and reflexes okay. Wicker's diagnosis at that time was low back pain, etiology undetermined. On May 18 Wicker hospitalized Davis and conducted several tests. Wicker testified that Davis had a myelogram, a bone scan, and spine x-rays, and the results of all tests were normal. On June 10 Wicker again examined Davis when he complained of back pain. Wicker testified that *1194 he found no nerve root irritation, no evidence of a ruptured disc, and felt Davis had reached maximum recovery. Wicker testified that it was his opinion at that time that Davis had no permanent disability.
Subsequently, Davis was seen again by Dr. Wood and after a friend suggested that he see Dr. Donald Cook in Meridian, he was referred by Dr. Wood to Dr. Cook. Davis was initially seen by Dr. Cook on June 29, where standard tests were conducted by Cook. Dr. Cook opined that reflexes, strength, and feeling in the legs were normal. Spinal x-rays were also normal. Davis returned to see Dr. Cook on July 7, and in view of the fact he still complained of pain, he was again hospitalized on July 25. At that time a nuclear bone scan, a repeat myelogram, and a CT scan were performed and reported as normal. At this time Dr. Fleckenstein, a Meridian neurosurgeon, expressed suspicion of a disc process, but recommended treatment other than surgical measures. Cook agreed with this diagnosis, and it was concluded that he had a Stage I or a Stage II discogenic disorder (lumbosacral strain).
On August 17 Dr. Edward Randolph Turnbull, a Laurel orthopedic surgeon, saw Davis. Turnbull conducted standard tests, found no areas of tenderness or spasm, and judged the x-rays to be normal. On August 31 Davis had an office visit with Dr. Cook, who determined no appreciable difference in Davis' condition. On September 13 Davis had an office visit with Dr. Turnbull, who determined no difference. On September 21 another examination was conducted by Dr. Cook.
On October 11 Davis had an office visit with Dr. Turnbull, during which Turnbull found no difference in Davis' condition. Davis claimed to be feeling better and asked to go back to work, and Dr. Turnbull released him. On October 12 Dr. Cook released Davis to go back to work. Davis gave this release to his boss the next day at SPC.
After working two weeks, Davis was pushing a buggy when he slipped or fell down, and again complained of pains in his back. On October 27 Davis reported the injury to his boss, Gerald Loper, who asked Davis where he wanted to go. Davis said, "Dr. Wood," and the employer sent him there.
Dr. Wood referred Davis back to Dr. Turnbull, who examined Davis on November 12. Although Davis complained of pain, Dr. Turnbull found no evidence of abnormality. Dr. Turnbull examined Davis on November 22 and December 6, and during the latter visit, Dr. Turnbull first learned of Davis' second injury on October 27, 1982. Accordingly, additional lab evaluation and tests were conducted by Turnbull. Two more examinations by Turnbull in late December gave Turnbull the conclusion that maximum medical improvement had been reached by Davis as of December 30. Since Davis still complained of pain, Turnbull referred him to Dr. Buford Yerger in Jackson.
On January 7, 1983, Dr. Yerger conducted a series of tests on Davis. Yerger's conclusion was that the x-rays were normal, no surgery was necessary, and maximum medical improvement had been reached.
On January 18 Davis still complained of pain in his lower back which would often shoot down into his left leg. He went back to see Dr. Cook, who examined him and found all tests still normal. Due to Davis' complaints, Dr. Cook re-admitted him to the hospital on January 23, where the standard tests were run. In addition, a repeat CT scan was conducted.
The CT scan was interpreted by the radiologist and Dr. Cook as showing a generalized bulge at the L-5 S-1 level, but no localized herniation. This was not present on the previous CT scan and, in Dr. Cook's opinion, was consistent with the area in which Davis was experiencing pain. Dr. Cook diagnosed that Davis had a tear on the interior of the annulus of sufficient degree to allow a generalized bulge in the band but not localized enough to warrant the classification of a herniated disc or a ruptured disc.
From February, 1983, until August, 1983, the date of Cook's deposition, Davis *1195 made periodic visits to Dr. Cook, where Cook examined and evaluated him. Cook testified that Davis' complaints remained the same, and his examination was essentially unchanged except for the fact that he did experience pain going into the left thigh, and there was diminished sensation over the outside border of his left foot. In Cook's opinion, this indicated some degree of irritation to a spinal nerve at the area where the CT scan had disclosed the annulus bulge. Dr. Cook was of the opinion that Davis was in need of further treatment, additional hospitalization, and evaluation for surgery. In Dr. Cook's opinion, Davis had not reached maximum medical recovery as of September 1, 1983, the date of the deposition.
At an evidentiary hearing on March 30, 1983, Davis and his wife testified that he was in continuous pain, and when he stood or walked a lot, his back would give out. The medical depositions of Drs. Cook, Turnbull, Wicker and Yerger were entered into evidence. The issues before the Administrative Judge that are relevant here are:
1. Extent of permanent partial disability, if any;
2. Duration of temporary total disability, if any;
3. Whether or not the medical services rendered by Dr. Cook should be paid by the employer/carrier.
On March 26, 1984, the Administrative Judge entered an order in which he found that all four medical specialists were in agreement that none of their medical evaluations determined any major objective findings that would cause any of the doctors to recommend surgery, limitations or restrictions upon Davis' activities, or the assigning of any degree of permanent partial impairment to the body as a whole from a medical standpoint. The Administrative Judge found that Dr. Cook did not express any opinion different from the other doctors because he made no recommendation that the claimant have surgery. The Administrative Judge further found that should there be a question that Dr. Cook's testimony was different from that of the other three specialists, the greater weight should be placed upon the testimony of Drs. Turnbull, Wicker and Yerger, which was "stronger, clearer and more convincing than the minor differences of opinion expressed by Dr. Donald E. Cook herein."
The Administrative Judge ordered that:
1. Davis failed to meet his burden of proof that he was disabled or incurred any degree of permanent partial disability.
2. Temporary total disability should be paid to Davis from 4-27-82 to 10-12-82 and from 10-27-82 to 1-07-83.
3. The employer/carrier was required to pay all hospital, medical services and supplies incurred due to Davis' injuries, but specifically excluded any services rendered by Dr. Cook.
On March 29, 1984, Davis arranged to have a thermogram performed. A thermogram is a heat photograph that detects heat emissions throughout various regions of the body. Davis' thermogram showed heat emissions around the lower part of his back and extending down into the left leg. Based on the results of this thermogram, Davis filed a motion to have the hearing re-opened since this evidence weighed in his favor and would bolster the testimony of Dr. Cook.
On October 9, 1984, the full Commission, after hearing arguments on Davis' motion to re-open and on the case-in-chief, issued an order overruling Davis' motion to re-open and affirming the order of the Administrative Judge. Davis filed an appeal to the circuit court of Wayne County.
The circuit court affirmed the full Commission's findings as they related to Davis' disability and motion to re-open. However, the circuit judge found that the opinions expressed by Dr. Cook were materially different from those expressed by Drs. Yerger, Turnbull and Wicker. Therefore, the circuit judge reversed the full Commission's findings as to the financial responsibility of SPC for medical services rendered by Dr. Cook and hospital bills and consultations recommended by Cook.
*1196 Davis has filed an appeal to this Court on the issue of his disability and the motion to re-open. SPC has cross-appealed on the issue of their financial responsibility for the medical services of Dr. Cook.

LAW

A. FINDING OF PERMANENT PARTIAL DISABILITY.
As this Court has stated in cases too numerous to mention, if the decision of MWCC was based on substantial evidence, this Court is not authorized to reverse. This Court cannot pass upon the weight of evidence where the same is conflicting in substantial particulars and to determine where the preponderance lies. See, e.g., Hamilton Mfg. Co. v. Kern, 242 So.2d 441, 444 (Miss. 1970); Hemphill Drug Co. v. Mann, 274 So.2d 117, 119 (Miss. 1973).
The burden of proof was on Davis to establish his disability. American Potash & Chem. Corp. v. Rea, 228 So.2d 867 (Miss. 1969). Medical findings are required to uphold an award of permanent disability in any degree based upon the occurrence of a back injury. In the absence of medical proof, the burden is not met by the claimant's testimony alone. Harris v. Chicago Mill & Lumber Co., 441 So.2d 557 (Miss. 1983); Dunn, Mississippi Workers Compensation, § 118.2 at p. 40 (Supp. 1986).
The statutory definition of disability to require support by medical findings logically applies to back complaints because this is not an uncomplicated ailment. Cole v. Superior Coach Corp., 234 Miss. 287, 106 So.2d 71 (1958). Only medical experts can qualify to give a prognosis and project a disability as continuing indefinitely into the future. Id. at 291, 106 So.2d 71; Dunn, § 118.2 at p. 41.
The existence of permanent disability is a factual determination. Dillingham Mfg. Co. v. Upton, 252 Miss. 281, 172 So.2d 766 (1965). The Administrative Judge's opinion clearly shows his factual determination was that none of the doctors recommended surgery, limitations or restrictions on Davis' activities. (R. 30) None of the doctors assigned any degree of permanent partial impairment to the body as a whole from a medical standpoint. The absence of these medical findings was sufficient to meet the "substantial evidence" test relied on by the MWCC. Since we are not authorized to reverse, Davis' request for a finding that he was permanently partially disabled must be denied.

B. TEMPORARY TOTAL BENEFITS
Regarding Davis' temporary total benefits, however, we hold that the Administrative Judge was in error in ending Davis' temporary total benefits on January 7, 1983.
When analyzing medical proof, Dunn tells us that the ultimate issue to be determined should be kept in mind when evaluating the medical evidence. The cases fall into three categories, involving issues of:
1. causal connection of a death or conceded disability;
2. the continuance of a disability found to be compensable in its inception; and
3. the degree of wage capacity lost from a disability found to be present and permanent.
Dunn, § 282 at p. 358. Accordingly, we focus on the second category.
When the issue is continuance of a disability, conflicting medical testimony may be reconciled by relating the testimony to the time of medical examination:
... In such cases, lay testimony is usually emphasized, and the testimony is to the effect that the claimant is unable to perform his usual work and suffers disabling pain.
Id.
Dunn explains further:

Thus, if a claimant sustains a compensable injury and receives medical treatment until discharged as cured, the testimony of the doctor who discharged the claimant may not be sufficient to furnish an effective conflict with that of another doctor who examined the claimant at a later date and who gives it as his opinion that the patient remains in a disability status, especially *1197 if the claimant so testifies that he continues to be disabled from the injury. The basic reasoning is that the last examination and treatment begins where the former ends and a mere prognosis by the first doctor that claimant will have no future trouble does not conflict with credible evidence of actual subsequent developments. The witnesses simply speak as of different periods of time. [Emphasis added]
Id., § 279, at p. 350-351; see Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (1956).
The principle above has been established in the following cases where conflicting medical testimony was reconciled so as to find no conflict because the examinations were done at different times: Reyer v. Pearl River Tung Co., 219 Miss. 211, 68 So.2d 442 (1953); Int'l Paper Co. v. Handford, 223 Miss. 747, 78 So.2d 895 (1955); O'Neal v. Multi-Purpose Mfg. Co., 243 Miss. 775, 140 So.2d 860 (1962).
We find that Masonite Corp. v. Fields, supra, is dispositive of the issue before us. In Masonite, the attorney referee disallowed temporary total disability benefits after June 5, the date of estimated maximum medical recovery according to the employer's doctor. On June 14, the claimant still complained of pain and was examined by a Dr. Granberry. After twelve visits to Dr. Granberry from June 14 to October 6, Dr. Granberry testified the claimant was suffering from "severe lumbosacral strain" and maximum medical recovery had not been reached.
Regarding the continuance of temporary total benefits, we held:
Hence [Dr. Granberry's] testimony, and that of [claimant] stand uncontradicted to the effect that through October 6, 1955, Fields was suffering a temporary total disability resulting from the injury received in his employment. This testimony was not in conflict with the other medical testimony, and was not inherently improbable, incredible, or unreasonable, nor was it discredited. Under these circumstances it should be taken as binding upon the trier of facts. It should not be arbitrarily and capriciously rejected.
229 Miss. at 529, 91 So.2d at 283-84.
Applying the same analysis to the case before this Court, from January 18, 1983, until September 1, 1983, (date of Dr. Cook's deposition), the testimony of Davis and Dr. Cook is uncontradicted to the effect that Davis was suffering from a temporary total disability.[1] The facts of the case at bar make a stronger argument for such a finding, since Dr. Cook's medical findings showed an annulus bulge on the CT scan that had not been there before. The employer should have thereafter re-examined Davis to refute Dr. Cook's opinion. See A. DeWeese Lumber Co. v. Poole, 231 Miss. 83, 94 So.2d 791 (1957). Since the testimony of Davis and Dr. Cook is not in conflict with the other medical testimony, nor was it discredited, it should not have been rejected by the Administrative Judge when he cut off temporary total disability payments as of January 7, 1983.
We hold that since the evidence was supported by the January 23, 1983, findings of Dr. Cook that Davis did not reach maximum medical recovery; therefore, he was entitled to compensation for each week after January 7, 1983, to the date of the hearing and each week thereafter during the continuance of his disability as provided by law. See Reyer v. Pearl River Tung Co., supra, 219 Miss. at 218, 68 So.2d 442, for authority supporting this remedy.

C. MOTION TO RE-OPEN
It is discretionary with the Commission whether or not it will re-open a case. MCA § 71-3-53 (Supp. 1985). A hearing should be re-opened when the claimant can establish by a preponderance of the evidence that his condition has changed. *1198 North Miss. Medical Center v. Henton, 317 So.2d 373 (Miss. 1975).
Davis filed his motion to re-open based on the results of a thermogram which corroborated the findings of Dr. Cook. The thermogram did not show any changing condition other than what Dr. Cook testified. Therefore, the thermogram results were not evidence of a changing condition, but were merely new evidence. Based on the standard of review before us, we cannot say the Commission abused its discretion in refusing to re-open the hearing. Accordingly, this assignment of error is without merit.

D. MEDICAL SERVICES OF DR. COOK
The circuit judge found that since the testimony of Dr. Cook was materially different from that of other doctors, then his medical services should be paid for by the employer.[2] The applicable statute here is MCA § 71-3-15(5) (Supp. 1981) which provides:
An injured worker who believes that his best interest has been prejudiced by the findings of the physician designated by the employer or carrier shall have the privilege of a medical examination of a physician of his own choosing at the expense of the carrier or employer. Such examination may be had at any time after injury and prior to the closing of the case, provided that the charge shall not exceed one hundred dollars ($100) and shall be paid by the carrier or employer where the previous medical findings are upset, but paid by the employee if previous medical findings are confirmed.
Under this section the Administrative Judge denied any payment of services by Dr. Cook, because he found that Dr. Cook was Davis' physician of his own choosing. The full Commission affirmed the Administrative Judge with respect to this issue. Since temporary total disability benefits should have been continued, Dr. Cook's testimony did upset the previous medical findings, and therefore SPC should pay the examination fee up to a limit of $100. See Williamson v. Delta Millworks, Inc., 262 So.2d 183 (Miss. 1972), (where claimant consulted a doctor of his own choosing without advising employer of his decision to do so, and claimant made no demand on employer to provide for operation found necessary by new physician, employer was liable for claimant's examination up to $100, but not for cost of operation even though medical findings were upset).

CONCLUSION
Regarding the finding of no permanent partial disability, the circuit judge should be affirmed. Regarding the disallowing of temporary total disability benefits after January 7, 1983, the decision should be reversed based on the case of Masonite v. Fields, supra. The circuit judge was correct in finding no abuse of discretion by the Commission in refusing to re-open the hearing. Finally, the medical services rendered by Dr. Cook should not be paid by SPC, except to the extent of $100 for Cook's medical examination.
We therefore reverse and remand to the Commission for determination of the proper cutoff date of Davis' temporary totl benefits which began on October 27, 1982.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
WALKER, C.J., and ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The doctor who examines the claimant last does not necessarily become the most credible. See South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 593 (Miss. 1985). In that case, the opinion of a doctor who examined the claimant on several occasions was not undercut by the subsequent contradictory opinion given by a physician who examined the claimant only once. Id; see also Johnson v. Ferguson, 435 So.2d 1191 (Miss. 1983).
[2] In allowing Dr. Cook's medical services to be paid by SPC, the circuit judge apparently ruled due to the amended version of MCA § 71-3-15(1), which allows for a claimant to select a physician of his own choosing. However, this act did not take effect until July 1, 1982. Since Davis' injury was before this date, he must abide by the pre-1982 law and would therefore follow the holding of Williamson v. Delta Millworks, Inc., 262 So.2d 183 (Miss. 1972).