MALLEY *v.* OVER THE TOP, INC., et al.

No. 40297 November 26, 1956 90 So. 2d 678

*Grayson B. Keaton,* Picayune; *Morse & Morse,* Poplarville, for appellant.

*Eaton, Cottrell & Galloway,* Gulfport, for appellee.

GILLESPIE, J.

The attorney-referee held appellant's claim compensable under the Workmen's Compensation Act. The Commission reversed the order of the attorney-referee and denied compensation, and on appeal to the circuit court, the Commission was affirmed.

On June 18, 1954, while employed by Over The Top, Inc., one of the appellees, appellant struck a table corner, injuring her coccyx. Conservative treatment failed and appellant under went an operation on August 6, 1954 for the removal of the coccyx. The orthopedic surgeon who performed the operation, after three post-operative ex-

aminations, discharged appellant as being able to return to work on September 14, 1954, to which date compensation was paid, but which payment was suspended on that date. No one contends that appellant is not disabled, and we need not discuss the evidence in that regard except as may be necessary in considering whether her disability after September 14, 1954 resulted from the accident on June 18, 1954.

 █ The principal question is whether the Commission has substantial evidence to support its finding that appellant's disability after September 14, 1954 was not the result of the injury sustained by her on June 18, 1954. Appellant testified that before the date of the injury she worked regularly, was in good health, and suffered no low-back pain or pain in the coccyx area; that since the injury she had suffered low-back pain and pain in the area of the operation site; that she could not sit or stand without pain and was totally disabled from doing work for her employer, and she was unable to do any housework. She testified that prior to her injury she had undergone two operations, one for the removal of her female organs. Five other lay witnesses testified that appellant was in good health before the accident and has been disabled from doing any work since the date of the accident. Appellant's physician, who examined her on September 27, 1954, and subsequently treated her, attributed the pains causing her disability to the injury. He stated that he could determine that the pain came from the coccyx area because injection of procaine blocking the nerves to that area caused the pain to cease; but other medical testimony was to the effect that this test was not conclusive unless referral pain, or additional pathology, was ruled out. Appellant's physician, however, arrived at his opinion as to the cause of the pain without having made sufficient examination to determine that she was suffering from diseases of her internal organs.

Five specialists and the employer's company physician testified for appellees. Three specialists in orthopedic surgery, including the one who performed the operation for the removal of the coccyx, after examination of the appellant, testified that in their opinion the operation was successfully performed, and the operative scar was well healed, and there was no abnormal mass at the operation site. These specialists testified that they made certain tests as well as a physical examination of the operative site and studied x-rays. They found no pathology relative to the sacrum or coccygeal zone and were of the opinion that from the orthopedic standpoint the removal of the coccyx had been adequately performed with good functional results. They found no disability insofar as the injury and operation was concerned which would prevent the patient from active occupation or that would cause pain such as appellant suffered. One of these specialists testified that pathology in the pelvic area, or female trouble, could cause the pain of which appellant complained, and he sent her to an internal medicine specialist for further examination.

The specialist in internal medicine testified that he made an examination of the appellant, at which time appellant complained of soreness in the region of the injury and in her back; a pelvic examination was done; that this examination revealed the uterus had been partially removed; that the cervix was grossly eroded, friable, and swollen; that manipulation of these parts produced the identical pain of which appellant complained, both in the region of the coccyx and in the low-back; that while he would not assert the disease of the female organs as being the only answer to appellant's pains, that his findings in that area were "pretty conclusive as far as I am concerned." The substance of this specialist's testimony was that appellant's complaints were referrable to the disease of the female organs. .

A specialist in gynecology made a pelvic examination of the appellant on December 22, 1954. He testified that the uterus had been surgically removed; that the cervix was markedly hypertrophed to the extent that it was three to three and one-half times its normal size, showed lacerations and inflammation with bleeding from several areas; that what appellant was actually complaining of was low-back ache when he examined her, and that he was able, by manipulation of the cervix, to produce the back pain of which she was complaining; that his examination revealed that the cervix was chronically diseased sufficient not only to give discomfort but pain; that he was of the opinion that the disease of the pelvic area had existed for a period of months or probably more than a year. He testified that if a competent orthopedic specialist saw appellant and assured him that there were no orthopedic conditions which attributed to her backache, he would be willing to say that the greatest percentage of her pain was coming from the chronic cervicitis.

The company physician, by means of a statement introduced by agreement, stated that he treated appellant in 1941 for nervous indigestion; that she had been operated on for female trouble in 1946; that in 1947 he treated appellant for indigestion, weakness and nervousness, and in 1948 for a kidney infection and for cramping in her stomach and backache and nervousness; in 1949 several treatments for minor injuries to her fingers; that he treated appellant in 1952 for diabetes, nervous indigestion, weakness, backache and kidney trouble, and again in 1952, for nervous indigestion, weakness, backache and kidney trouble, and again in the same year for a stiff neck, and at which time her kidneys showed pus, and in September 1953, witness operated on her for a gland abscess of the vagina. Appellant was treated by this physician after her injury and he sent her to New Orleans for an operation by an orthopedic surgeon.

After the operation for the removal of her coccyx, he found no evidence of any residual effects of the surgery or the accident.

We are of the opinion that the finding of the Commission that there was no causal connection between her disability and the injury is supported by substantial evidence. We do not think that it can be said, as contended by appellant, that her testimony was strong, clear and convincing, nor that the testimony of appellees was negative and weak. The Commission had a right to find to the contrary. Cf. Morris v. Art's Army Store, 85 So. 2d 581.

Nor do we find that this is a case for the application of the rule laid down in Reyer v. Pearl River Tung Company, 219 Miss. 211, 68 So. 2d 442, wherein it was said that the inability of doctors to put their fingers on the exact physical cause should not result in casting the claim overboard. In the present case, not only did the testimony of the physicians fairly demonstrate that neither the operation nor the injury was the probable cause of the disabling pain, but went further and showed that the disease revealed by the pelvic examination was the probable cause of the pain.

██ ██ Appellant contends that the findings of the attorney-referee were supported by sufficient evidence and that we should hold that the attorney-referee is the fact finder and that the review before the Commission should be limited to questions of law. We held in Railway Express Agency v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754, that the attorney-referee is a facility for conducting the business of the Commission and that for all practical purposes, the Commission is the actual trier of facts. Section 18, Chapter 354, Laws of 1948 (Code of 1942, Sec. 6998-24) states: ''The commission shall have full power and authority to determine all questions relating to the payment of claims for compensation. The commission shall make or cause to be made

such investigation as it deems necessary, and upon application of either party, or upon its own iniative, shall order a hearing, and shall make or deny an award and file the same in its office.''

It is true that the statute provides ''That for the purpose of conducting hearings and making decisions upon claims, the attorney-referee or attorney-referees appointed by the commission shall have the authority of a commissioner.'' Sec. 41, Chapter 354, Laws of 1948 (Code of 1942, Sec. 6998-47). It does not provide that the attorney-referee is to have the authority of the Commission. Our view that the Commission is the trier of facts is fortified by the provisions of the third paragraph of Sec. 37 of the Act (1942 Code, Sec. 6998-43) wherein it is stated: ''Because cumulative experience is conspicuously essential to the proper administration of a workmen's compensation law, it is declared to be in the public interest to continue Workmen's Compensation Commissioners in office as long as efficiency is demonstrated.'' No such provision is made with reference to attorney-referees.

There is considerable force to the argument that the attorney-referee is in a better position to decide disputed questions of fact because he hears the witnesses and observes their demeanor. On the other hand, the cumulative experience of the three commissioners representing diverse interests and their expertise in their particular field of endeavor may have been among the considerations that prompted the legislature to vest in the Commission full power and authority to decide all questions relating to the payment of claims for compensation.

We are of the opinion that it was the intention of the legislature to make the Commission the trier of facts. Otherwise, the Commission would be performing appellate jurisdiction when only one of the Commissioners is required to be an attorney. If we should adopt appellant's contention, the attorney-referee would be the trial tri-

bunal with the Commission, the circuit court and this Court all performing appellate functions. It is manifest to us that such was not the intention of the legislature. ██ █ Accordingly, we hold that the Commission itself is the trier of facts and any question of fact decided by it is conclusive on appeal if it is supported by substantial evidence. It follows that the judgment should be and is affirmed.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Ethridge,* JJ., concur.