577 So.2d 1243 (1991)
WALKER MANUFACTURING COMPANY
v.
Joe Carroll CANTRELL.
No. 90-CC-0177.
Supreme Court of Mississippi.
March 27, 1991.
Ralph E. Pogue, Aberdeen, for appellant.
W. Howard Gunn, Aberdeen, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
The ultimate issue in this workers' compensation case is the extent of the claimant/employee's permanent partial loss of wage-earning capacity following a concededly compensable on-the-job scheduled member injury. A measure of arbitrariness inheres in any such finding. In the end, we find that the record supports, by substantial evidence, the Mississippi Workers' Compensation Commission's findings that, because of his work-connected injury, the claimant suffered a five percent permanent partial occupational disability by reason of the injury to his left hand. The Circuit Court rejected that view, opting instead for a forty percent disability finding made by the Administrative Judge.
We reverse and reinstate the order of the Commission. Because of the course of proceedings below, we must revisit procedural premises we had thought long ago well settled.

*1244 II.

A.
Joe Carroll Cantrell was born on August 22, 1946, and lives in the Gattman Community in Monroe County, Mississippi. Cantrell has an eighth grade education and a work history of various "manual labor" jobs.
At all times relevant, Cantrell was employed by Walker Manufacturing Company, a division of Tenneco, Inc., ("Walker Manufacturing") at its facility on Highway 25 South in Aberdeen, Mississippi. He was earning approximately $350.00 per week. Walker Manufacturing is a self-insurer under the Mississippi Workers' Compensation Act.
Cantrell describes his job with Walker Manufacturing as that of a "setup man." On September 9, 1985, Cantrell was operating a machine known as a vector bender. He was loading a pipe on the auto-loader, and the bender was bending the pipe at the same time. Somehow a piece of pipe crushed his left hand. Cantrell was immediately seen and treated by Dr. Robert E. Coghlan, a family practitioner in Aberdeen, who "cleaned his hand and sewed it up and gave him two pills."
The following morning, Cantrell was referred to Dr. Charles S. Rhea, orthopedic surgeon, of Columbus, Mississippi. On September 11, Dr. Rhea found Cantrell suffering a painful neuroma of the ring finger on his left hand and sought surgically to repair the tendons in his patient's hand. Cantrell experienced difficulties, and, on October 8, 1985, Dr. Rhea performed a second surgical procedure. Dr. Rhea followed Cantrell on an out-patient basis for the next six months, at which time he found that Cantrell "has no restrictions with the use of his left hand" and "can return to work at a light duty job." Dr. Rhea added that Cantrell continued to experience pain in his hand and that he should avoid "heavy lifting or forceful gripping." At the same time Dr. Rhea referred Cantrell to Dr. Michael F. Jabaley, specialist in reconstructive surgery, in Jackson, Mississippi, for evaluation. Dr. Jabaley recommended that Cantrell return to light duty work only and, if none were available, he should find other employment. All of this was in the Spring of 1986.
Walker Manufacturing offered Cantrell the opportunity to return to work, in a different position but with no change of pay.[1] On April 29, 1986, Walker renewed this proposal via a letter written by Jimmy D. Taylor, personnel manager, as follows:
I have been advised by your doctor, per the attached letter, that you can return to work. As I have told you before, we have work available for you and need for you to be on the job whenever possible. I have been unsuccessful in getting you to return my calls or to get in touch with me for several weeks. By copy of this letter, I am advising you that if you do not report for work through this personnel office before 3:30 P.M. Monday, May 5, 2986 (sic), that you will be terminated from our employment.
Cantrell did not reply. True to its word, Walker Manufacturing terminated his employment and ceased paying temporary total benefits.
In time, Cantrell sought the care and treatment of Dr. John G. Gassaway, orthopedic surgeon of West Point, Mississippi, beginning with an initial visit on July 29, 1987. Dr. Gassaway described Cantrell's problem as "a very sensitive scar on the palm and a neuroma embedded in the scar which was causing the pain that radiated up claimant's forearm to the elbow." Active use of the left hand made Cantrell's pain worse. On October 27, 1987, Dr. Gassaway performed a surgical procedure on Cantrell's hand described as a neuroplasty *1245 of the digital nerve. Cantrell's hand progressively improved, as noted in Dr. Gassaway's record of follow-up out-patient care. On January 20, 1988, Dr. Gassaway advised that Cantrell had reached maximum medical improvement and stated subsequently that Cantrell had a residual five percent permanent medical impairment to his left hand.
At the time of the hearing below, Cantrell was employed by Greenwood Springs, a garment factory in the Aberdeen area, and was making approximately $135.00 a week. He stated that he was still experiencing difficulty with his left hand.

B.
This matter was heard by an Administrative Judge (sometimes "AJ") who, on January 9, 1989, released his decision finding that Cantrell had reached maximum medical improvement on or about January 20, 1988, and that he was experiencing "a forty percent (40%) industrial loss of use of the left hand." The hand is a scheduled member. Miss. Code Ann. § 71-3-17(c)(3) (1972). The Administrative Judge ordered that Walker Manufacturing pay Cantrell compensation and provide for his reasonable and necessary medical services and supplies.
Walker asked that the order be reviewed by the Commission, which heard the matter on July 20, 1989. On October 10, 1989, the Commission modified the AJ's order, holding that Cantrell's proof failed in important particulars and that he had shown only a five percent permanent partial disability to his hand. En route, the Commission found, first, that Cantrell had provided no medical evidence that his permanent impairment exceeded five percent, and, further, that Cantrell failed to attempt his usual duties following his last surgery and had not returned to work in spite of Walker Manufacturing's offer. Moreover, the Commission found that Cantrell had failed to prove an occupational disability attributable to his hand injury in excess of the five percent medical impairment Dr. Gassaway had found. The Commission explained that Cantrell had not:
... provide[d] any witnesses to corroborate his statements of inability to work or perform the usual duties of his customary employment, nor did he provide any proof that he was refused employment based upon the disability to his hand.
Cantrell appealed to the Circuit Court of Monroe County, which reversed and reinstated the AJ's order. In an unusual opinion, the Circuit Court first articulated, in no uncertain terms, its disagreement with the established rule that the Mississippi Workers' Compensation Commission sits as "the trier of facts and judge of the credibility of witnesses." Purporting to accept the rule, albeit reluctantly, the Court based its reversal and reinstatement order upon its opinion that
... the Administrative Judge is experienced and having seen and heard that which went into the record should be in a position to arrive at the degree of occupational loss with reasonable certainty.
This burst of candor aside, the Circuit Court recited an obligatory:
... [T]he decision of the Commission is clearly erroneous, adverse to the overwhelming weight of the evidence, is contrary to the beneficent intent and purpose of the act and is reversed.

III.
As a matter of custom and practice, the Administrative Judge is generally, within the Mississippi Workers' Compensation Commission, the individual who conducts the hearing and hears the live testimony, such as it is. We had thought it established beyond peradventure, however, that the Commission itself is, in law, the finder of the facts and that on judicial review, its findings and decisions are subject to the normal deferential standards, notwithstanding the AJ's actions. See, e.g., Piggly Wiggly v. Houston, 464 So.2d 510, 511-12 (Miss. 1985); Johnson v. Pearl River Sand & Gravel Co., 242 Miss. 349, 351-52, 134 So.2d 434, 435 (1961); cf. Morris v. Lansdell's Frame Co., 547 So.2d 782, 784-85 (Miss. 1989); Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); *1246 Day-Brite Lighting Div. v. Cummings, 419 So.2d 211, 213 (Miss. 1982); Malley v. Over The Top, Inc., 229 Miss. 347, 354-55, 90 So.2d 678, 680-81 (1956); Railway Express Agency v. Hollingsworth, 221 Miss. 688, 695, 74 So.2d 754, 756 (1954). On this premise Walker Manufacturing appeals to this Court and asks that we reinstate the Commission's order. The appeal and, particularly, the Circuit Court's action require that we briefly reinvent the wheel.
The Mississippi Workers' Compensation Act became law in 1948 and provided, inter alia, an administrative process whereby claims of work-connected injuries might be expeditiously made, processed and decided. The Legislature vested full responsibility for the handling of these matters in the Commission. Miss. Code Ann. §§ 71-3-1, et seq. (1972). The Act committed to the Commission the duty of prescribing "the details of practice and procedure in the settlement and adjudication of claims." Miss. Code Ann. § 71-3-47 (1972); see also, Miss. Code Ann. § 71-3-85(5) (1972). Pursuant to this authority, the Commission has developed and evolved a procedure whereby hearing officers go out into the field and receive testimony and other evidence and make initial awards, subject always to review and modification by the Commission itself. See MWCC Procedural Rules 7-10. What must be kept always in mind is that each AJ is a member of the Commission's administrative staff. Miss. Code Ann. § 71-3-93 (1972). He or she is but a "facility" through which the Commission discharges its legislative mandate. Railway Express Agency, 221 Miss. at 695, 74 So.2d at 756; see also, Dunn, Mississippi Workers Compensation § 369 (3d Ed. 1982) and cases cited. The process and structure bear a surface similarity to that of trial and appellate court, but this view is factually and legally mistaken. That the title given the hearing officers was changed in 1974 from attorney referee to administrative judge, Miss. Laws ch. 384 (1974), reflects a professional upgrading, rather than an increase in power or authority.
Mississippi's most familiar author in the field has summarized the point:
The Commission on review is not technically a court of appeal, but is basically the original fact-finding agency and while its consideration is usually upon the record as made before the administrative judge, it reviews the evidence as well as the law. The administrative judge, in this respect, is no more than a facility for conducting the business of the Commission and for all practical purposes the Commission is the actual trier of the facts.
Dunn, supra at § 284. In explaining why judicial deference is due the Commission, and not the AJ, Dunn points to the fact that:
The Commission, as distinguished from its hearing officer, is unlimited by statute in its investigation, and may make or cause to be made such investigation as it deems necessary.
Dunn, supra, at § 284. Significantly, the Commission has the authority to receive live testimony and other evidence to supplement the record made before the AJ, see MWCC Procedural Rule 9; Dunn, supra at § 284. As a matter of common sense, the duty of deference should be owed that agency which has the authority to close the factual record.
Near the end of this Court's first decade of experience with the Act, we put it thus:
There is considerable force to the argument that the... [Administrative Judge] is in a better position to decide disputed questions of fact because he hears the witnesses and observes their demeanor. On the other hand, the cumulative experience of the three commissioners representing diverse interests and their expertise in their particular field of endeavor may have been among the considerations that prompted the legislature to vest in the Commission full power and authority to decide all questions relating to the payment of claims for compensation.
Over The Top, Inc., 229 Miss. at 354, 90 So.2d at 680-81.

C.
Our statutory law addresses the matter of judicial review in the Circuit Court. *1247 Mississippi Code Annotated § 71-3-51 (1972) reads:
The circuit court shall review all questions of law and of fact. If no prejudicial error be found, the matter shall be affirmed and remanded to the commission for enforcement. If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the commission should have entered.
We have repeatedly read this statute to establish the Circuit Court's function as that of an intermediate court of appeals. More to the point, we have held repeatedly that the Circuit Courts must defer in their review to the findings of the Commission. Stuart C. Irby Co., 523 So.2d at 317; Champion Cable Construction Company, Inc. v. Monts, 511 So.2d 924, 927 (Miss. 1987).
In a very real sense, all of this is nothing other than a workers' compensation variant on accepted limitations upon the scope of judicial review of administrative agency decisions, i.e., that the courts may interfere only where the agency action is seen arbitrary or capricious. See, e.g., Citizens Involved Voluntarily in Consolidation (CIVIC) v. Wayne County Board of Education, 574 So.2d 619, 622 (Miss. 1990); Gill v. Mississippi Department of Wildlife Conservation, 574 So.2d 586, 591 (Miss. 1990); Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc. d/b/a Riverside Hospital, 528 So.2d 804, 808 (Miss. 1988); General Motors Corp. v. Mississippi State Tax Commission, 510 So.2d 498, 502 (Miss. 1987); Mississippi Employment Security Commission v. Philadelphia M.S.S.D., 437 So.2d 388, 394 n. 6 and 398 n. 13 (Miss. 1983); Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905, 907 (1933). Arbitrariness and caprice are in substantial part a function of the presence vel non of credible evidence supporting the agency decision. Where we find such evidence, we have no more authority to interfere with the decisions of the Commission than we do in a case of any other administrative body.

IV.
Our scope of review (re)settled, we examine the record. The Commission found that Cantrell's injury has left him with a five percent permanent partial disability to the hand. Walker Manufacturing presses that we hold this finding sufficiently grounded in law and fact that it may survive scrutiny on judicial review.
It does not matter, per se, that there may be evidence which would have supported a higher than five percent disability rating. That we may have found the fact otherwise, had we been the triers of the fact, is similarly of no moment, so long as the record contains credible evidence which, if believed, would take the Commission's decision out of the realm of the arbitrary.
The Act addresses loss of wage-earning capacity, occupational or industrial disability, if you will (Miss. Code Ann. § 71-3-3(i) (1972)), as well as functional impairment or medical disability (Miss. Code Ann. § 71-3-17(c)(23)); Stuarts, Inc. v. Brown, 543 So.2d 649, 652-54 (Miss. 1989); Robinson v. Packard Electric Division, General Motors Corporation, 523 So.2d 329, 331 (Miss. 1988); American Potash and Chemical Corporation v. Rea, 228 So.2d 867, 868 (Miss. 1969); Dunn, supra at § 86. The Act specifically views claims for injuries to scheduled members in this way. Houston, 464 So.2d at 512; Richey v. City of Tupelo, 361 So.2d 995, 997-98 (Miss. 1978); M.T. Reed Construction Co. v. Martin, 215 Miss. 472, 477-78, 61 So.2d 300 (1952). Common experience teaches that a measure of imprecision infects any such regimen. The Legislature has institutionalized this imprecision in the case of scheduled members, preferring certainty to extended litigation.
Where a worker's occupational disability from loss of use of the scheduled member exceeds functional or medical impairment, the law measures his compensation by the former. City of Tupelo, 361 So.2d at 997-98; Bill Williams Feed Service v. Mangum, 183 So.2d 917, 920 (Miss. 1966). Some scheduled member injuries, on the other hand, may leave the employee with a medical impairment exceeding occupational disability, *1248 and in those cases, the statute directs that compensation be paid by reference to the employee's medical impairment rating. Even so, the statutory schedule caps the number of weeks for which compensation is payable, though the injury to the scheduled member in practice leaves the worker permanently totally occupationally disabled. In M.T. Reed Construction Co. v. Martin, supra, for example, the claimant had suffered a one hundred percent permanent loss of wage-earning capacity by reason of a leg injury. Because the leg is a scheduled member, the Court ordered benefits paid for only 175 weeks, well short of the 450 weeks of benefits payable in the non-scheduled member injuries. Contrast Miss. Code Ann. § 71-3-17(a) with § 71-3-17(c)(3) (Supp. 1990).
These thoughts before us, our question is whether Cantrell's proof of an occupational disability due to his hand injury is so powerful we must hold the Commission's five percent finding clearly erroneous, arbitrary and capricious.
We look first to the medical testimony, remembering that the claimant's disability "must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (1972); Lansdell's Frame Co., 547 So.2d at 785; Davis v. Scotch Plywood Co. of Mississippi, 505 So.2d 1192, 1196 (Miss. 1987). Cantrell was seen and treated by four physicians, Drs. Coghlan, Rhea, Jabaley and Gassaway. Two of these, Drs. Rhea and Gassaway, performed surgery on his hand. The only one to offer a percentage disability rating is Dr. Gassaway, Cantrell's last treating physician, and Dr. Gassaway said he suffered a five percent permanent impairment of the left hand. It is reasonably clear that Dr. Gassaway did not have in mind occupational or industrial disability standards. Indeed, we would think it seldom that a physician would possess the expertise to give an authoritative opinion regarding loss of wage-earning capacity or occupational disability. On the other hand, Dr. Gassaway's testimony is certainly some evidence of a five percent permanent partial disability to the hand. None of the other physicians gave a disability rating. Back in 1986, Dr. Rhea was of the opinion that Cantrell could return to light duty. Dr. Jabaley gave a similar opinion.
Cantrell testified that he continued to experience pain, that he was no longer able to perform the duties of his prior employment, that he had tried to get work elsewhere at a like level and rate of pay, but had been unsuccessful, and that his present salary at Greenwood Springs was $135.00 a week, down from $350.00 a week. It may well be that the Commission could have credited this testimony. In fact, the Commission did not and cited three particulars.
First, the Commission found that Cantrell had failed to offer evidence, following his last surgery  that performed by Dr. Gassaway on October 27, 1987  that he had attempted  unsuccessfully  to perform his usual duties. This is true. There is nothing in the record suggesting that following his recuperation from his last surgery Cantrell attempted, with Walker Manufacturing or any other employer, to perform duties like unto those he was performing prior to his injury back on September 9, 1985. Second, the Commission found that Cantrell had failed to produce "any witnesses to corroborate his statements of inability to work or perform the usual duties of his customary employment." This again is true. Cantrell's case stands or falls on his own testimony. He called no other witness, nor did he elicit any corroborating testimony from employer's witness.
Third, the Commission found that Cantrell had failed to offer evidence "that he was refused employment based upon the disability to his hand." Cantrell testified that following his discharge from Walker's employment, upon his failure to return to work, he sought employment with Gattman's Sportswear and Hollis Lumber Company. He said Gattman's told him he would have to get a release before they could offer him a job and that Hollis Lumber told him they had no light work available. All of this amounts to little, as Cantrell later took a job with Greenwood Slacks in Gattman, a company maintaining a pay scale like unto Gattman's and Hollis.
*1249 A claimant such as Cantrell must make a reasonable effort to secure other comparably gainful employment. The law does not require that he move to another part of the state, but he must cast his eyes further than across the street. Piper Industries, Inc. v. Herod, 560 So.2d 732, 735 (Miss. 1990); Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss. 1980). Cantrell made no search for work outside Gattman, saying his car had been repossessed and he was without transportation. The Commission may reasonably have found that Cantrell had imposed limitations upon himself and that he had not attempted or sought normal work duties with Walker Manufacturing or other comparable employers in his home county. The Commission was within its prerogatives when it interpreted Cantrell's proof as failing to establish that he was refused comparably gainful employment because of the disability to his hand.
This said and all things considered, we may only hold that the evidence in this record, consistent with the Commission's findings of evidentiary and ultimate fact, is substantial and credible. This is particularly so when we realize that Cantrell as claimant bore the burden of production of evidence of his disability and, as well, the risk of non-persuasion on the issue. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1020-21 (Miss. 1990); Scotch Plywood Co. of Mississippi, 505 So.2d at 1196; American Potash & Chemical Corp. v. Rea, 228 So.2d at 868. On the evidence, the Commission may have found Cantrell experienced no permanent partial occupational impairment, in which event his compensation becomes a function of his five percent medical impairment and the statutory directives for scheduled member injuries. Under these circumstances, we must reverse the judgment of the Circuit Court and direct that the Commission's order be fully reinstated.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents without written opinion.
NOTES
[1] The personnel director testified that they had light work available for the claimant and that they had this work available in the Spring of 1986. He testified and even brought a small bushing to the hearing and demonstrated to the Administrative Judge that the claimant could have done this work with one hand, would have been sitting down, and the heaviest thing he would have had to pick up was a small bushing (a hollow tube, a piece of tail pipe, which is what the employer manufacturers) approximately five to six inches long and weighing no more than three or four pounds.