BRIDGES, J., for the Court:
¶ 1. On April 23, 1998, the Pearl River County Circuit Court affirmed an order by the Workers’ Compensation Commission which found that Martha Necaise failed to show she had suffered a compensable injury while working for Magnolia Personal Care (Magnolia). The circuit court had previously remanded the case back to the Commission for failure of either the administrative law judge or the Commission to state and/or adopt any findings of fact. The Commission then reiterated its affirmation of the administrative law judge and stated “[i]t is our opinion now as it was then that the Claimant in this case failed *308 to put forth sufficient credible evidence to support her claim.” Necaise appeals the circuit court’s affirmation of this order, asserting that Commission’s second order “failed to follow the circuit court’s order to make specific finding of fact, and conclusions of law upon which the claimant’s case was decided.”
FACTS AND PROCEDURAL HISTORY
¶ 2. This cause arose from Necaise’s claim that on Friday, April 29, 1994, a resident of Magnolia kicked her between the shoulder blades thereby injuring her neck. Necaise was the only witness to the accident as the resident did not testify. On that Friday, Necaise told Jim Allison, her supervisor and the owner of Magnolia, of the incident but said she was not significantly injured. She testified that on the following Monday she fell and hit her knees on the shower floor as she was adjusting a shower head at Magnolia. Again she reported the incident to Allison, and he suggested she see Dr. Donald Berry. On May 5, 1994, Berry examined Ne-caise’s knees and back but found nothing wrong. Additionally, in early May of 1994, Necaise testified that Allison refused to assign her to any more shifts at Magnolia even though she told him that physically she was able to return to work.
¶ 8. With Allison’s approval, Necaise sought treatment from Dr. Thomas Purser on May 20, 1994. Dr. Purser did not testify, but it appears from his office records that were introduced as an exhibit that Necaise was treated by him through July of 1994. Necaise then sought treatment from at least two other physicians, M.F. Longnecker, M.D. and Ahmad Hia-dar, M.D., who prescribed medication to reheve pain. A major controversy at the hearing level as well as subsequent reviews at the Commission, the circuit court, and the Court of Appeals is whether these medications were truly necessary for any underlying injury, and if such injury existed whether it occurred in the scope of Necaise’s employment at Magnolia.
¶ 4. However, from the record it appears there can be no doubt that Necaise suffered some injury because on August 18, 1995, Dr. Harry Danielson removed two disks from the area of her neck, levels C4-5 and C5-6. Dr. Danielson testified by deposition that while he had not released Necaise from his care, he estimated she suffered . a fourteen percent permanent partial disability. There is no contention that this surgery was unnecessary.
¶ 5. Magnolia’s contention at the hearing and throughout appellate review is that the injury leading to the surgery did not occur through her employment at Magnolia. Magnolia also asserted that Dr. Daniel-son’s, and perhaps Drs. Longnecker’s and Hiadar’s, treatments were unauthorized.
¶ 6. At the administrative hearing, Ne-caise’s testimony was less than clear. Ne-caise testified that she had never had a serious neck injury prior to the accident. During cross-examination Magnolia sought to impeach this assertion through evidence showing that Necaise had settled a previous workers’ compensation claim approximately one year before the Magnolia accident. Records of that previous claim were introduced as an exhibit, and they indicate the injury was a back and ankle strain, yet a pain diagram that Necaise drew while obtaining treatment for this injury shows she had pain in the back of her neck. Necaise also had suffered a back injury in an automobile accident prior to her Magnolia employment. Additionally, Necaise reported to Dr. Hiadar that she fell in her kitchen causing pain in her shoulder area.
¶ 7. Despite these possible non-work related causes on Necaise’s neck injury, no one testified that anything other than the Magnolia accident was, in fact, the cause of the injury necessitating surgery. Rather, Necaise stated it was the cause of the pain that ultimately led to the surgery. Additionally, Dr. Danielson testified:
based upon the reliability and the accuracy of the history given [by Necaise] that — there was a significant contribu *309 tion and aggravation to anything that may have gone on before that was asymptomatic, secondary to that vehicular accident. But everything seems to point to a probable causal relationship between her herniations and this injury where she was kicked and then hit the window sill and jarred her neck.
However, upon cross-examination Dr. Dan-ielson stated he had not been informed of the previous workers’ compensation claim with Jitney Jungle.
¶ 8. The hearing officer authored a sixteen page order, fifteen of which were a summary of evidence introduced at the hearing. She concluded this order with three paragraphs headed under “decision”:
Upon evaluation of all testimony, lay and medical, and based upon a preponderance of the evidence supported by applicable law, I hereby render the following findings of fact:
The claimant has failed to sustain her burden of proof that she suffered a work-related injury on or about the date alleged in the Petition to Controvert. Conflict reigns among the lay testimony as presented This determination is made based on all evidence as submitted as well as an observation of the demeanor of the claimant on the occasion of this hearing and with special consideration of the facts and controlling law.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the claimant’s claim for workers’ compensation benefits be, and the same is, hereby denied.
Without hearing oral arguments, the Commission affirmed the case with one paragraph:
“Having heard arguments offered on behalf of the parties and having thoroughly studied the record and applicable law, the Commission affirms the ‘Order of Administrative Judge.’ ”
¶ 9. The trial court remanded the action to the Commission to “place in the record specific findings of fact or conclusions of law” and in doing so stated:
Ordinarily the Court could assume that the Commission simply adopted the findings of fact and conclusions of law of the administrative law judge. Here, however, that option is also unsatisfactory. The Administrative Law Judge, after setting forth a thorough and detailed summary of the evidence and testimony presented, found simply and generically that the claimant “failed to sustain her burden of proof .... based on all the evidence as submitted as well as an observation of the demeanor of the claimant ... and with special consideration from the facts and controlling law.” This “finding of fact” leaves the Court with no means to determine the specific basis upon which the ALJ’s decision was made. Short of re-weighing the facts of the case, which this Court may not do, there is no basis in the record at this point from which to decide the appeal.
¶ 10. The Commission again affirmed, without offering specific findings of fact. The trial court finally affirmed, stating:
At their core, then, the ALJ’s findings say no more than “I looked at the evidence, heard the testimony, watched the witnesses, and considered the law. Based on all this, Ms. Necaise loses.” These are the findings that the Commission originally affirmed. Nowhere in this short paragraph is there any indication of whether any of the witnesses were credible and, if so, which ones. There is not one whit of explanation to guide this Court in luhy Ms. Necaise “failed to sustain her burden of proof.” Rather, the Court was apparently expected to “rubber-stamp” the ALJ’s (not even the Commission’s) finding based on the unembellished assertion that the Plaintiff had “failed to sustain her burden of proof.” This is simply not enough. Accordingly, the case was remanded for further elucidation.
In its second “Full commission Order,” the Commission graciously notes that “it is our opinion now as it was then that the Claimant in this case failed to *310 put forth sufficient credible evidence to support her claim. Neither the Judge nor the Commission found the Claimant’s evidence believable...” (emphasis added). This statement at least gives the Court a peg on which to hang its hat in reaching a decision. The Commission’s decision at least now says, “We looked at the evidence, heard the testimony, watched the witnesses, and we did not believe them, and we considered the law. Based on all this, Ms. Necaise loses.”
ANALYSIS
¶ 11. Necaise asserts that the circuit court erred in affirming the Commission’s second order because this order, like the first order, failed to make specific findings of fact and state conclusions of law.
¶ 12. The Commission, rather than the administrative judge, is the finder of fact in workers’ compensation cases. Railway Express Agency v. Hollingsworth, 221 Miss. 688, 695, 74 So.2d 754, 756 (1954); Malley v. Over the Top, 229 Miss. 347, 353, 90 So.2d 678, 680 (1956). Therefore, the question in this case is whether the factual finding that the Commission made in its second order was sufficient for the circuit court to affirm the decision for the employer Magnolia. That finding was simply that Necaise failed to put forth “credible” evidence. The supreme court has found that under the Mississippi Rules of Civil Procedure a trial court “generally should” make specific findings of fact. Tricon Metals and Services v. Topp, 516 So.2d 236, 238 (Miss. 1987).[1] However, workers’ compensation proceedings are not strictly subject to the Mississippi Rules of Civil Procedure. Miss.Code Ann: § 71-3-55 (Rev.1995). Moreover, where a trial court has failed to make specific findings of fact, upon appellate review a court should “assume” findings of fact consistent with the inferences that could be drawn from the record in order to reach a result that will affirm the trial court’s decision. Tricon Metals and Services, 516 So.2d at 238-39. See also Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987); 46 AM. JUR. 2D Judgments § 95 (1994).
¶ 13. Viewing this case from Ne-caise’s viewpoint, there is a question as to why she did not prevail upon the record submitted to the Commission. Where a claimant testifies as to pain resulting from an employment related accident, and medical evidence corroborates a causal connection between the accident and a medical diagnosis, a claim is ordinarily compensa-ble. See Dunn, MISSISSIPPI WORKMAN’S COMPENSATION § 281 (3rd ed.1990). In this case, the only witness to the accident was Necaise. Her testimony that she was injured when a resident of Magnolia kicked her was not contradicted. Further, no one contradicted Dr. Daniel-son’s testimony that surgery was necessary. As such, Necaise put forth evidence sufficient to prevail.
¶ 14. Nevertheless, something in the record must have led the Commission to conclude that the injury for which Dr. Danielson performed an operation was not related to the injury Necaise suffered while working at Magnolia. Upon cross-examination, Dr. Danielson stated that Necaise had not fully informed him of her past injury at Jitney Jungle. Additionally, Necaise was still taking pain medications related to a past injury approximately ten days before the Magnolia injury, and Dr. Danielson stated he was unaware of this fact until the day of his testimony. As such, the Commission may have found that the Magnolia injury was a continuation of the Jitney Jungle injury.
¶ 15. Conversely, the Commission could have found the injury which required Dr. Danielson to perform surgery occurred after the Magnolia accident. Dr. Berry examined Necaise after the Magnolia acci *311 dent, but before Danielson began treating Necaise, and found no injury to her neck. Additionally, Necaise told both Drs. Hia-dar and Danielson that she had fallen in her home several times after the Magnolia accident. As such, the Commission could have found Necaise injured her neck in a way unrelated to the Magnolia accident.
¶ 16. Where substantial evidence supports the Commission’s decision, an appellate court will affirm the decision. Shelby v. Peavey Electronics Corp., 724 So.2d 504, 506 (Miss.App.1998). In this case, the Commission’s decision is supported. However, when the Commission or a trial court fails to specifically state what factual findings led to a particular result, not only are the parties left with an uncertainty as to what actually determined issues of importance to them but also an appellate court is forced to delve into the record to try to ascertain how the facts were weighed against the evidence. This practice invites a re-weighing of the evidence, which should be discouraged. See e.g. Tricon Metals and Services, 516 So.2d at 239. Therefore, it would have been helpful if the Commission plainly set forth findings of fact supporting its .decision. Nevertheless, because substantial evidence supported a finding that Necaise’s injury was not causally related to the surgery performed by Dr. Danielson, the Circuit Court did not err in affirming the Commission’s second order. There is no error.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, P.J., DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J. AND PAYNE, J.

. But see Morreale v. Morreale, 646 So.2d 1264, 1270 (Miss.l994)(stating that not every failure to make specific findings of fact mandates reversal).