IRVING, J.,
for the Court:
¶ 1. On October 19, 2001, Debra F. Johnson filed a petition to controvert with the Mississippi Workers’ Compensation Commission (Commission), alleging that she had suffered bilateral carpal tunnel syndrome while working at Sanderson Farms, Inc. Following a hearing, an administrative judge (AJ) concluded that Johnson had developed bilateral carpal tunnel syndrome on August 16, 2000, and awarded her temporary total disability benefits in the amount of $173.43 per week for the period commencing August 16, 2000,[1] and ending November 22, 2003. The AJ later found that Johnson had suffered a permanent disability of ten percent to each hand and awarded her $173.43 per week for the period commencing November 22, 2003, and continuing for forty weeks. Sander-son Farms appealed to the Commission. The Commission affirmed the AJ’s finding of compensability for bilateral carpal tunnel syndrome and the award of temporary total disability benefits; however, the Commission reduced the amount of Johnson’s permanent disability rating to five percent in accordance with the medical bilateral impairment rating assigned to Johnson by one of her treating physicians. Sanderson Farms appealed to the circuit court, which affirmed the Commission’s decision. It is from that decision that Sanderson Farms now appeals, setting forth the following issues, which we quote verbatim:
1. The Mississippi Workers’ Compensation Commission (hereinafter re *69 ferred to as MWCC) erred in finding that the Claimant suffered a com-pensable injury as such decision was not supported by substantial evidence and, in fact, is contrary to the overwhelming weight of the evidence.
2. The MWCC erred in ordering temporary total disability benefits in the amount of $173.43 each week beginning August 16, 2000 and continuing through November 22, 2003, as such is not supported by substantial evidence but, in fact, is contrary to the overwhelming weight of the evidence.
3. The MWCC erred in awarding penalties and interest as such was not supported by substantial evidence but, in fact, was contrary to the overwhelming weight of the evidence.
4. The MWCC erred in not excluding the testimony of Dr. [John] Passman and of Dr. [Robert] Haimson as such violated Daubert standards and Evi-dentiary Rule 702 of the Mississippi Rules of [Evidence] which require that expert testimony be based on reliable data and not conelusory statements. Dr. Haimson’s and Dr. Passman’s testimonies] w[ere] admitted over objections notwithstanding neither had any data or scientific evidence to support their conelusory statements as to causation. Such was error.
5. The MWCC erred in not giving greater weight to the testimony of Dr. Nortin Hadler who presented ... un-refuted scientific evidence that Claimant’s alleged carpal tunnel syndrome was not related to the limited employment of Claimant.
6. The MWCC erred in giving any weight to the testimonies] of Dr. Passman and Dr. Haimson as neither based [his] opinion on any scientific data indicating that the limited work exposure of the Claimant at Employer’s place of employment caused or contributed to the Claimant’s alleged carpal tunnel syndrome.
7. The MWCC erred in calculating Claimant’s weekly wage at $260.15 as such was not supported by substantial evidence and was against the overwhelming weight of the evidence.
8. The MWCC erred in finding that Claimant did not reach MMI [ (maximum medical improvement) ] until November 22, 2003, as such was not supported by substantial evidence and against the overwhelming weight of the evidence.
9. The MWCC erred in awarding 20 weeks of permanent partial disability benefits (5% for each upper extremity) as such is not supported by substantial evidence and is against the overwhelming weight of the evidence.
¶ 2. Although Sanderson Farms lists these nine issues, its brief is focused almost entirely on attacking the medical testimony offered by Johnson, asserting that it was received in violation of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Mississippi Transportation Commission v. McLemore, 863 So.2d 31 (Miss.2003).[2] We find, as did the circuit court, that the Commission is not required *70 to strictly follow the rules of evidence and, more specifically, the dictates of Daubert, as embraced by McLemore. We further find that there is ample medical evidence to support the Commission’s findings. Therefore, we affirm the judgment of the circuit court, which affirmed the Commission’s decision.
FACTS
¶ 3. Johnson began working at Sander-son Farms on August 12, 2000. Initially, she was responsible for pulling the intestines from chickens. Then, approximately one week after she began working, she was transferred to another job where she worked as a backup to a machine that is designed to cut the windpipes of chickens. Johnson was responsible for cutting the windpipes that were missed by the machine. To perform this task, Johnson held the chicken in her left hand and used scissors in her right hand. Both of Johnson’s jobs required her to perform repetitive, manual work.
¶4. Shortly after changing positions, Johnson began to experience swelling and pain in her hands. She reported these problems to her supervisor, Bernita Smith. At some point thereafter, Johnson saw Dr. David McGraw at the Catchings Clinic in Woodville, Mississippi. Dr. McGraw placed Johnson on medical leave in November 2000.[3] Dr. Lee Voulters performed an electromyogram (EMG) and a nerve conduction study (NCS) on June 25, 2001, which confirmed that Johnson suffered from bilateral carpal tunnel syndrome. Specifically, Dr. Voulters found that: “This study shows evidence of a median nerve entrapment neuropathy at the wrists, bilaterally, i.e., bilateral carpal tunnel syndrome. This is a neuropraxic type injury, right greater than left.” After the June 25 tests, Dr. McGraw wrote a letter “to whom it may concern,” stating that “this condition is usually caused by or aggravated by repetitive use of the hand and wrist.” He then referred Johnson to Dr. John Passman, a board-certified orthopedic surgeon.
¶ 5. Johnson first saw Dr. Passman on August 21, 2001, at which point Johnson informed him that she had suffered from pain in both of her hands since August 2000. Johnson attributed the pain to her work at Sanderson Farms. On June 24, 2003, Dr. Passman wrote a letter to Sand-erson Farms’ attorney, stating that Johnson had had a second EMG and NCS on May 23, 2003, that indicated that she had “mild bilateral carpal tunnel syndrome worse on the left side.” Then, on August 22, 2003, Dr. Passman’s partner, Dr. Robert Haimson, performed a carpal tunnel release on Johnson’s left wrist. The release did not provide Johnson any significant improvement; therefore, she declined further surgery.
¶ 6. Dr. Passman concluded that Johnson had reached maximum medical improvement sometime in 2003, even though he continued treating her until December 2005. Dr. Passman’s final diagnosis of Johnson was bilateral carpal tunnel syndrome. He opined that Johnson had suffered a five-percent physical-impairment rating in each upper extremity. He further opined that Johnson should refrain from performing work that would cause her to experience pain in her hands or would require flexion of the wrists. Dr. Passman also opined that it is possible for a person to develop carpal tunnel syndrome after only a few months of using scissors to cut the necks of chickens.
¶ 7. Dr. Haimson saw Johnson regularly after he performed the carpal tunnel release on her in 2003. He concluded that *71 Johnson had reached maximum medical improvement three to six months after the carpal tunnel release was performed. In a letter written on June 30, 2004, to Sander-son Farms’ attorney, Dr. Haimson noted that he had performed a follow up EMG that showed “some decreased nerve conduction in the area of the carpal tunnel consistent with some degree of residual or recurrent carpal tunnel syndrome.” He further concluded that: “Based upon her recounting of the history of her condition and description of the work she [had] performed at the Sanderson Chicken Factory, I believe that it is medically probable that her carpal tunnel [syndrome] was the direct result of her employment at the chicken company.”
¶ 8. Dennis Lewis and Lisa Caine, two of Johnson’s supervisors while she was employed at Sanderson Farms, testified. Neither Lewis nor Caine recalled Johnson ever complaining about pain in her wrists. Further, Lewis testified that Johnson was only responsible for cutting the windpipes of approximately three chickens per minute. Finally, Lewis stated that Johnson was terminated in December 2000 for failure to report to work for three days.
¶ 9. Smith, a nurse at Sanderson Farms, testified via deposition that Johnson came to her office on September 13, 2000, and again on November 27, 2000. According to Smith, Johnson complained of soreness on September 13 and of problems with her hands on November 27.[4] Smith could not recall Johnson coming to visit her on any other occasion.
¶ 10. Johnson provided testimony via deposition and again before the Commission. Johnson stated that her duties were changed during her second week at Sand-erson Farms. According to Johnson, her hands began to hurt shortly after she began using scissors to cut the chickens’ necks. Johnson stated that both of her hands were affected, her right hand more than her left. Johnson stated that she informed her supervisors of the problem that she was experiencing and that she also went to see one particular nurse at least twice and another approximately thirty to forty times during the course of her employment at Sanderson Farms. Johnson stated that the nurse that she frequently saw often failed to notate the time that she saw her.
¶ 11. Johnson saw Dr. McGraw and was under his care until he released her to return to light-duty work in March 2001. According to Johnson, it was at that point that she discovered that her employment with Sanderson Farms had been terminated the previous December. Johnson testified that per company policy, she contacted Lewis on a daily basis from November 2000 until March 2001, because she was unaware that she had been terminated. Johnson explained that she returned to Sanderson Farms and was informed by Caine that she should wait six months and reapply for a position in the freezer. She stated that she declined to follow up on employment possibilities at Sanderson Farms because she could not work in the freezer.
¶ 12. According to Johnson, she had not had any problems with either her hands or her wrists prior to her employment at Sanderson Farms. However, Johnson acknowledged having been involved in a motor-vehicle accident in 1994, wherein she had suffered head and back injuries and was hospitalized for ten days. Johnson was involved in another motor-vehicle acci *72 dent in 1996, wherein she was struck by a drunk driver. Johnson testified that she did not suffer any injuries as a result of the 1996 accident. Johnson also acknowledged that she had worked at a sewing company for ten years prior to her employment at Sanderson Farms; however, Johnson again stated that she had not experienced any problems with her hands or wrists until after she started working at Sanderson Farms. Johnson also testified that she applied for social-security benefits in 1994 and that she was denied benefits. The record reflects that Johnson also filed an application for disability benefits with the Social Security Administration on April 24, 2001, wherein she stated that she was unable to work because of a disabling condition that began on November 23, 2000. This request was also denied. Then, on August 16, 2001, Johnson submitted a request for reconsideration with the Social Security Administration, wherein she provided the following reasons as to why she was seeking reconsideration:
I suffer with a severe and disabling lower back condition, and severe headaches. I had a motor vehicle accident in 1994, in which I hurt my right leg, and knee. My left shoulder goes numb. My right hand has bilateral [sic] carpal tunnel syndrome. My right hand stays in constant pain. I am not able to bend over due to the severe pain in my back. I also have severe pain in my left hand.
¶ 13. Dr. Lon Alexander performed an independent medical examination of Johnson. Dr. Alexander reviewed the EMG and NCS performed by Dr. Voulters, as well as medical records from Dr. Passman and Dr. L.J. Owens.[5] In a clinical note dated March 27, 2002, Dr. Alexander stated that his physical examination of Johnson led him to conclude that “there is no objective evidence of carpal tunnel syndrome.” However, he noted that the EMG and NCS “show evidence of a median nerve entrapment neuropathy at the wrist that is bilateral carpal tunnel syndrome.” Dr. Alexander stated:
It seems unlikely to me that the work regimen that she described would cause carpal tunnel syndrome. It may have caused an irritation to her median nerve, but this would have resolved with cessation of the repetitive injury, in my opinion. Therefore, I am ill equipped to state beyond a reasonable degree of medical certainty that the brief period of time in which she pursued any sort of repetitive activity at Sanderson Farms would be the cause for surgical release for ... entrapped median nerves.
[[Image here]]
A repeat electromyogram and nerve conduction study performed now may be probative. That is to say, if one were to opine that the short course of manual labor that is being postulated as the proximate causative agent for median nerve entrapment is endorsed, then one could also opine that with cessation of this activity, the impairment should update. However, that is to say, perhaps electromyogram and nerve conduction studies done now would be normal. Again, I remain unconvinced that that which I have had described to me, and the duration thereof, would be the proximate causative agent of any sort of median nerve entrapment, with this opinion being rendered to a reasonable degree of medical certainty.
¶ 14. At his deposition on January 30, 2003, Dr. Nortin Marvin Hadler, a rheu-matologist, was qualified as an expert “not only in the medical field as a medical doctor, but [as] an expert in the field of workplace musculoskeletal disorders.” *73 Dr. Hadler testified that he did not examine Johnson but that he had reviewed her medical records and concluded that she did not have carpal tunnel syndrome. He reached this conclusion because Johnson had not shown classic symptoms of carpal tunnel syndrome when she visited Dr. McGraw and because her EMG and NCS results were not compelling. According to Dr. Hadler, even if he were to conclude that Johnson had carpal tunnel syndrome, that would not necessarily mean that it resulted from her work at Sanderson Farms. Specifically, Dr. Hadler testified that he does not believe that carpal tunnel syndrome occurs as a result of repetitive activity.
¶ 15. Following the hearing, the AJ found that Johnson developed bilateral carpal tunnel syndrome while working at Sanderson Farms. Therefore, as noted, he awarded her temporary total disability benefits in the amount of $173.43 per week from the date of injury — August 16, 2000 — to the date that she reached maximum medical improvement, November 22, 2003. The AJ then concluded that he did not have enough information regarding any permanent injuries that Johnson might have sustained, so he ordered Johnson to see Dr. Rahul Vohra to obtain an impairment rating and any work restrictions that she may require.[6] The AJ then held the issue of permanent disability in abeyance pending the results of Dr. Voh-ra’s evaluation. An independent medical examination with Dr. Vohra was scheduled for March 15, 2007; however, Johnson arrived late for her appointment, and Dr. Vohra would not see her. The examination was rescheduled, but Johnson was late again, and Dr. Vohra, as he had done before, refused to see her.[7] The AJ, without the benefit of Dr. Vohra’s opinion, found that Johnson had suffered a permanent disability of ten percent to each arm. As we have already noted, the Commission affirmed the AJ’s finding that Johnson developed bilateral carpal tunnel syndrome while working at Sanderson Farms but reduced her impairment rating to five percent to each arm.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 16. In its sole issue, Sanderson Farms argues that the Commission’s decision that Johnson suffered a work-related injury, i.e. carpal tunnel syndrome, is arbitrary and capricious, as the decision was not based upon medical opinions supported by scientific evidence. Sanderson Farms argues that it presented competent, medical evidence to the Commission which compels the conclusion that carpal tunnel syndrome is not caused or contributed to by repetitive work.
¶ 17. An appellate court’s review of a decision of the Commission is “limited to whether the Commission’s decision is supported by substantial evidence.” Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010) (citing Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991)). It is well settled that “[t]he Workers’ Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding.” Id. (quoting Smith v. Container Gen. Corp., 559 So.2d 1019, 1021 (Miss.1990)). An appellate court will only reverse a decision of the Commission “where such order is clearly erroneous and contrary to the over *74 whelming weight of the evidence.” Id. (citing Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994)).
¶ 18. Sanderson Farms asserts that the AJ erred in relying on the opinions of Drs. Passman and Haimson to conclude that Johnson developed carpal tunnel syndrome while working at Sanderson Farms. The crux of Sanderson Farms’ argument is that the AJ should have given more attention to the opinion of Dr. Hadler, who opined that carpal tunnel syndrome cannot occur from repetitive work activities.
¶ 19. Dr. Hadler has an extensive body of work on the subject of carpal tunnel syndrome. Specifically, he has written numerous articles and several books regarding carpal tunnel syndrome. Dr. Hadler surmises that it is no longer tenable to conclude that carpal tunnel syndrome arises as a result of repetitive motion. Dr. Hadler offered several cross-sectional and longitudinal studies that he relied on to reach his conclusion. Finally, Dr. Hadler concluded that carpal tunnel syndrome is a function of the psychosocial activities of a person’s life.
¶ 20. This is a classic case of conflicting opinions among physicians. Here, as noted, Johnson’s treating physicians, Drs. Passman and Haimson, testified that Johnson developed carpal tunnel syndrome while working at Sanderson Farms. Moreover, Drs. McGraw and Voulters made the initial diagnosis. As noted, Dr. Hadler reached the opposite conclusion. It has long been established that the Commission is the ultimate fact-finder. Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss.2005) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992)). Further, “[t]he Commission is also the ultimate judge of the credibility of witnesses.” Id. (citing Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989)). An appellate court is required to affirm the decision of the Commission when substantial, credible evidence exists to support its decision. Id. (citing Smith, 607 So.2d at 1124). Therefore, the Commission was entitled to find the testimonies of Drs. Passman and Haimson more compelling than Dr. Ha-dler’s.
¶21. Sanderson Farms also asserts that the deposition testimonies of Drs. Passman and Haimson should have been excluded pursuant to the standard announced in Daubert and filed a motion to exclude their testimonies pursuant to Rule 702 of the Mississippi Rules of Evidence.[8] Additionally, in support of its contention, Sanderson Farms seems to suggest that our decision in Fresenius Medical Care and Continental Casualty Co. v. Woolfolk ex rel. Woolfolk, 920 So.2d 1024 (Miss.Ct.App.2005) stands for the proposition that experts testifying before the Commission must meet the Daubert standard. It is clear that we made no such finding in Fresenius. There we said:
Because we find that there is no substantial evidence supporting a critical fact assumed and relied upon by Dr. [Lynn] Stringer — that the call from the patient to [Stella] Woolfolk emotionally upset Woolfolk and induced stress in her — we do not find it necessary to *75 reach the merits of whether Dr. Stringer’s testimony complied with the Dau-bert standard. We do point out, however, that the Workers’ Compensation Commission operates under a relaxed evidentiary standard. See Miss.Code Ann. § 71-3-55(1) (Rev.2000); M.W.C.C. Procedural Rule 8 (1993).
Id. at 1029 (¶ 19).
¶ 22. Daubert requires that expert testimony be relevant and based on reliable information. Daubert, 509 U.S. at 597, 113 S.Ct. 2786. Sanderson Farms contends that the testimonies of Drs. Passman and Haimson are not reliable because their conclusions are not “based on data that will stand up to scientific inquiry.”
¶ 23. In addressing the Daubert issue, the circuit court opined as follows:
The Workers’ Compensation Commission operates under a relaxed evidentia-ry standard. See Miss.Code Ann. § 71-3-55(1) (Rev.2000); M.W.C.C. Procedural Rule 8 (1993). The Commission may look to rules of evidence or procedure which apply to courts of law to aid in the consideration of evidence, but it is not bound to strictly follow the rules proscribed for courts of law. Walters v. Blackledge, [220 Miss. 485] 71 So.2d 433, 446 (1954). The Commission may choose to look to M.R.E. 702 and McLe-more for instruction, but if an alleged expert falls short of the McLemore standards, the Commission has the right to relax the formal rules of evidence and admit the testimony if the evidence is “relevant and competent,” and the admission will help satisfy the overriding concern of how “best to ascertain the rights of the parties.” Miss.Code Ann. § 71-3-55(1) (Rev.2000); M.W.C.C. Procedural Rule 8(fn. 2).
This Court finds that the testimonies] of two orthopedic surgeons, both of whom had treated the claimant, and many other patients throughout their careers, for carpal tunnel syndrome, [were] both relevant and competent, pursuant to Mississippi statutes and rules. Id.
We agree with the opinion of the learned circuit judge. Clearly, the testimonies offered by Drs. Passman and Haimson are relevant and are based on reliable information, as they acted as Johnson’s treating physicians and concluded, based on her EMG and NCS results, that she in fact suffered from carpal tunnel syndrome. Thus, it cannot be reasonably argued that their opinions are not based on objective evidence and are not “based on data that will stand up to scientific inquiry.”
¶ 24. We find that substantial, credible evidence exists to support the Commission’s decision that Johnson developed compensable bilateral carpal tunnel syndrome while working at Sanderson Farms. As noted, Johnson’s EMG and NCS that were performed on June 25, 2001, confirmed the diagnosis. Further, Dr. McGraw stated that carpal tunnel syndrome is “usually created by or aggravated by repetitive use of the hand and wrist.” We recognize that Dr. Hadler disagrees with this theory and asserts that’ carpal tunnel syndrome is not caused by repetitive motion. However, Dr. Hadler’s position has yet to be adopted in the medical community and has been specifically rejected by the Commission. We find that the Commission’s position does not run afoul of any evidentiary rule or the holding in McLemore. Therefore, Sanderson Farms’ contention that there was no competent evidence before the Commission upon which it could legitimately base its finding is wholly without merit.
¶ 25. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS *76 APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. In her petition to controvert, Johnson averred that her injury occurred in August 2000; she did not state a specific date of injury.

. The Mississippi Supreme Court adopted the Daubert standard in McLemore, 863 So.2d at 39 (¶ 5).

. Johnson was terminated from Sanderson Farms on December 28, 2000.

. The record does not specify the location of the soreness or the specific problem with Johnson’s hands.

. It is not clear how Dr. Owens was involved with Johnson's treatment.

. Dr. Vohra specializes in physical medicine and rehabilitation.

. The AJ noted in his opinion that Johnson's attorney had informed him that Johnson had difficulty securing transportation to her appointments.

. Rule 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.