ROBERTS, J.,
forthe Court:
¶ 1. Marlin E. Golden Jr. injured his back and leg on October 18, 2009, while in the scope of his employment as a deputy sheriff in Leflore County. The Leflore County Board of Supervisors and its insurance carrier, Mississippi Public Entity WC Trust (collectively Board), admitted com-pensability, but they disputed the extent of Golden’s disability. The administrative judge (AJ) found Golden to be permanently, totally disabled as a result of his work-related injuries. The Board appealed this finding to the Mississippi Workers’ Compensation Commission, and the Commission affirmed the AJ’s findings.
¶ 2. Employing our limited standard of review, we are unable to say the Commission erred as a matter of law or acted in an arbitrary and capricious manner. Therefore, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Prior to beginning his career as a deputy sheriff in 1993, Golden had worked as a truck driver and a farmer. Golden remained employed as a deputy sheriff from 1993 until his injury on October 18, 2009. After injuring his back and leg while chasing a person of interest, Golden initially sought treatment from the-hospital and later followed up with his family doctor, Dr. Wally Moses. Dr. Moses referred him to Dr. Michael Winkelmann. Dr. Winkelmann ordered an MRI of Golden’s back; he then referred Golden to Dr. Greg Wood, who reviewed Golden’s MRI and determined that Golden was not a candidate for surgery. Dr. Wood recommended Golden receive injections for his back pain from Dr. Jeffrey Summers.[1] Golden also underwent physical therapy for his injury, but it was discontinued due to lesions on his feet.
¶ 4. Sheriff Ricky Banks completed a Public Employees’ Retirement System (PERS) Employer’s Certification of Job Requirements on March 2, 2010, and PERS approved Golden’s claim for duty-related disability benefits on June 4, 2010. On June 7, 2010, Golden tendered his resignation letter to Sheriff Banks and has not performed a job. search since that time. On January 5-6, 2011, Golden was given a functional capacity evaluation (FCE). As a result of the FCE, Dr. Winkelmann placed Golden at maximum medical improvement (MMI) on March 29, 2010, and assigned a 12% impairment rating to the body as a whole. Golden was also assigned restrictions on lifting more than fifteen pounds. Golden applied for PERS disability and was approved to receive it in June 2010.
¶ 5. On May 16, 2012, the AJ held a hearing on Golden’s workers’ compensation claim. At the hearing, Golden testified that he was diagnosed with diabetes in 1985, but his diabetes had not affected his *885 ability to work until after his work-related injury. He also testified that his heart conditions did not occur until after his work-related injury. Dr. Winkelmann’s deposition was also admitted into evidence. The AJ found that “[tjhere was insufficient credible evidence to show that [Golden’s] heart condition [was] preventing him from working!,]” and that Golden had “worked for several years with diabetes without having to miss work or retire.” Therefore, she found Golden was “permanently, totally disabled from his work-related back and right leg injury.” She ordered the Board pay Golden disability benefits of $414.29 weekly for 450 weeks.
¶ 6. The Board appealed the AJ’s decision to the Commission. By order dated March 25, 2013, the Commission affirmed the AJ’s decision. The Commission specifically addressed the issue of Golden’s lack of a job search and the issue of apportionment. It stated that Golden was excluded from the job-search requirement due to Dr. Winkelmann’s finding that Golden was totally disabled and would be unable to find meaningful employment. The Commission found that apportionment was not applicable to Golden’s case because “there [was] no evidence that [Golden’s] pre-exist-ing conditions had a demonstrable adverse impact on [Golden’s] wage-earning capacity prior to his October 18, 2009 injury.”
¶ 7. The Board raises three issues for this Court to review:
I. Whether the Commission erred by not requiring [Golden] to perform a job search as proof of his loss of wage[-]earning capacity.
II. Whether the Commission erred in awarding permanent and total compensation benefits to the claimant.
III. Whether the Commission erred in not apportioning [Golden’s] permanent benefits based on his preexisting condition.
STANDARD OF REVIEW
¶ 8. On appeal, this Court employs a substantial-evidence standard to review a workers’ compensation case; however, the standard of review is de novo when the issue is one of law and not of fact. Hugh Dancy Co. v. Mooneyham, 68 So.3d 76, 79 (¶ 6) (Miss.Ct.App.2011) (citing Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)). “In a workers’ compensation case, the Commission is the trier and finder of facts. If the Commission’s decision is supported by substantial evidence, the appellate court is bound by that determination even though the evidence would convince us otherwise, were we the fact-finder.” Id. (internal quotations and citations omitted).
ANALYSIS
I. PERMANENT DISABILITY AND JOB SEARCH
¶ 9. We will combine analysis of the first and second issues raised, as they involve a similar discussion. The Board first argues that the Commission erred by not finding that Golden was required to perform a job search as proof of his loss of wage-earning capacity. It submits that Golden was excused from performing the job search based on restrictions from his diabetes and heart condition as opposed to solely his work-related injury. Therefore, according to the Board, Golden should not have been excused from performing a job search since his work-related injury was not the cause of his disability, and failure to perform a job search is fatal to his claim for disability benefits. The second issue raised is whether the Commission erred in awarding Golden permanent and total disability benefits, because Golden failed to prove he was permanently and totally dis *886 abled as a result of his work-related injury.
¶ 10. “A worker’s compensation claimant must demonstrate (1) that he is medically disabled and unable to work, and therefore need not seek employment, or (2) that he has presented himself to his employer for work, and the employer failed or refused to reinstate him.” Lane Furniture Indus. Inc. v. Essary, 919 So.2d 153, 157 (¶ 16) (Miss.Ct.App.2005). A party claiming disability benefits must make a prima facie case that he has performed a job search but has been unable to find work in the same or other employment. Whirlpool Corp. v. Wilson, 952 So.2d 267, 272 (¶ 19) (Miss.Ct.App.2006) (citation omitted). “A finding that the claimant has not pursued alternate forms of work with sufficient diligence is grounds to deny a claim of total disability.” McCray v. Key Constrs. Inc., 803 So.2d 1199, 1203 (¶ 17) (Miss.Ct.App.2000) (citing Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1249 (Miss.1991)). However, as shown in prong 1 above, there exists an exception; in cases where a claimant can provide a medical opinion that he is totally disabled, he will be excused from performing a job search. Stewart v. Singing River Hosp. Sys., 928 So.2d 176, 185 (¶ 46) (Miss.Ct.App.2005).
¶ 11. Golden satisfied both options outlined above for proof of total disability. First, the parties stipulated that Golden had not performed a job search. However, the Commission relied on Dr. Winkel-mann’s testimony that Golden was 100% disabled based on his work-related injury. According to Dr. Winkelmann, Golden was “already 100% disabled secondary to diabetes and severe peripheral neuropathy.” Dr. Winkelmann was asked the following during his deposition:
Considering the extent of [Golden’s] preexisting multiple medical conditions, which include ... his diabetes and the secondary problems related to his diabetes, including his ankle and feet problems and his cardiac problems, do you have an opinion based upon a reasonable degree of medical probability as to whether [Golden] was a candidate for disability sooner rather than later even if he had not had a work-related injury to his low back on October 18, 2009.
Dr. Winkelmann responded:
I have actually been on the board of [PERS] for several years.... [Golden] certainly did have the medical conditions that would potentially allow him to retire through [PERS]. But usually what we would do is we would look at the fact that they were continuing to do the job. If they were continuing to do the job and were continuing to actually work in their condition, we [would not] necessarily just say based upon the medical diagnosis that they were disabled. It was more so were they still doing the job. And [Golden] until that period of time [of his injury] was actually active and doing the job. So I [do not] think I would have disabled him prior to [his injury].
There is no dispute that Golden was able to perform his job as a deputy sheriff until he was injured on October 18, 2009, even while having these other medical conditions. As quoted above, Dr. Winkelmann did not believe that Golden was disabled prior to his work-related injury, but as a result of his work-related injury, he became totally disabled. PERS also approved Golden’s claim for “duty-related disability benefits.” Thus, Golden provided medical proof that he was totally disabled and not required to perform a job search.
¶ 12. While the Board fervently argues that Golden should not be considered totally disabled because he had no intention of returning to work, there was evidence pre *887 sented that Golden was not offered another position with the sheriffs department. On the Employer’s Certification of Job Requirements filled out for Golden, Sheriff Banks indicated that Golden could no longer perform his job and that Golden had not been offered another position with the sheriffs department.
¶ 13. Lastly, the Commission, quoting Chestnut v. Dairy Fresh Corp., 966 So.2d 868, 870 (¶ 5) (Miss.Ct.App.2007), considered other factors such as Golden’s “actual wages earned prior to the injury as compared to [his] capacity to earn those same wages after the injury, as well as ... [his] age, education, training[,] work experience, and ability to return to the same or other employment.” The Commission found that Golden was not a candidate to return to his previous jobs of deputy sheriff, truck driver, or general laborer due to restrictions placed on him by Dr. Winkelmann. The Commission again relied on Dr. Winkelmann’s above-quoted testimony to support the finding that Golden “became occupationally disabled after his admitted work-related injury.” Further, once a prima facie case of disability has been made, “[t]he burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage-earning capacity.” Jordan v. Hercules, 600 So.2d 179, 183 (Miss.1992). There is nothing in the record to support a finding that the Board rebutted the prima facie case by proving a partial disability or that Golden did not suffer a loss of wage[-]earning capacity.
¶ 14. We find that the Commission’s decision was based on substantial evidence, and it did not err in relying on Dr. Winkel-mann’s testimony that Golden was totally disabled as a result of his work-related injury, thereby excusing Golden from completing a job search. These issues are without merit.
II. APPORTIONMENT
¶ 15. The Board urges this Court to find that the Commission erred in not apportioning Golden’s disability benefits based on his diabetes and heart condition. According to the Board, the Commission’s decision did not take into account the evidence that Golden’s “non-work related health conditions contributed to the production of the results following the injury.” The Board argues that Golden underwent several heart surgeries and that this affected his daily activity. For example, Golden had difficulty performing tasks during his FCE due to his poor cardiovascular endurance and chest pains. Additionally, Golden’s nerve damage from his diabetes affected his ability to complete his physical therapy. Thus, according to the Board, the amount of disability awarded should be reduced by Golden’s preexisting conditions of diabetes and cardiac issues.
¶ 16. First, we note that Mississippi Code Annotated section 71-3-7(2) (Rev. 2011), the statute governing apportionment in worker’s compensation cases, was amended in 2012; however, for the purpose of the present case, we will apply the statute as it read prior to the 2012 amendment. The subsection of the statute prior to the amendment is as follows:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
*888 Miss.Code Ann. § 71-3-7(2).[2]
¶ 17. In Stuart’s Inc. v. Brown, 543 So.2d 649, 655 (Miss.1989), the Mississippi Supreme Court provided a thorough analysis of section 71-3-7 as it read at the time. It found that “[a] ‘preexisting physical handicap, disease or lesion’ which did not impair wage[-]earning capacity ex ante by definition cannot be that which impairs wage[-]earning capacity ex post.” Further, the supreme court explained that, “where the evidence establishes ... a preexisting (symptomatic or asymptomatic) condition which causes the employee to experience no pre-injury occupational disability, apportionment may not be ordered.” Stuart’s Inc., 543 So.2d at 655.
¶ 18. We find this case to be controlling in the present case. In 1985, approximately eight years prior to becoming a deputy sheriff, Golden was diagnosed with diabetes. There is nothing in the record to show that his diabetes hindered him from performing his job duties as a deputy sheriff. Additionally, there is very little evidence in the record describing Golden’s heart condition, and no mention of how, if at all, it affected his ability to perform his job duties. The Board has not demonstrated that Golden’s preexisting conditions affected his ability to do his job prior to his work-related injury; therefore, we agree with Commission’s finding that Golden’s disability benefits should not be reduced as a result of his preexisting conditions.
¶ 19. Again, based on our review of the record, we find that the Commission’s decision not to apportion was based on substantial evidence. This issue is without merit.
¶ 20. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ. CONCUR.

. It is unclear from the record whether Golden received any injections. There were notations in the record that Golden was unable to receive the injections on one occasion due to high sugar levels and a history of taking Pla-vix.

. The amendment changed or added the following emphasized language:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this subsection, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury. The preexisting condition does not have to be occupationally disabling for this apportionment to apply.
Miss.Code Ann. § 71-3-7(2) (Supp.2013) (emphasis added).