# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-WC-01401-COA

**MERLENE MYRICK**                                        **APPELLANT**

**v.**

**UNIVERSITY OF MISSISSIPPI MEDICAL**            **APPELLEES**
**CENTER AND MISSISSIPPI INSTITUTIONS OF**
**HIGHER LEARNING**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MARSHALL JACKSON GOFF |
| ATTORNEY FOR APPELLEES: | DANIEL PAUL CULPEPPER |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 03/21/2023 |
| MOTION FOR REHEARING FILED: | |

       **BEFORE WILSON, P.J., SMITH AND EMFINGER, JJ.**

       **SMITH, J., FOR THE COURT:**

¶1.     Merlene Myrick appeals from the Mississippi Workers' Compensation Commission's (Commission) order finding that she was not entitled to permanent and total disability benefits for an admittedly compensable injury she suffered while employed by the University of Mississippi Medical Center (UMMC). She also appeals the Commission's finding that UMMC is not financially responsible for a medical procedure performed on her back the following year.

¶2.     On appeal, Myrick argues the Commission erred by (1) finding that her failure to conduct a job search was fatal to her request for an ultimate remedy of permanent and total disability benefits and (2) denying her request to have an L4-L5 microdiscectomy procedure

deemed causally related and therefore deemed the financial responsibility of UMMC. After review, we find no error and affirm the Commission's order.

## FACTS AND PROCEDURAL HISTORY

¶3.     Myrick testified that she sustained a work-related injury on January 17, 2018, when she slipped and fell on a patch of ice in UMMC's parking lot as she was walking in to begin her shift as a day-surgery manager, a position she had held for over two years following a long career in the nursing field. She went in to work after her fall and remained at work through her entire shift. Myrick never returned to work at UMMC after January 17, 2018.

¶4.     On January 18, 2018, Myrick sought treatment from Dr. Jason Craft. Myrick represented to Dr. Craft that she suffered from pain that radiated up her lumbar spine but did not radiate down her leg. Dr. Craft opined that she had sustained a lumbar strain. Then on January 22, 2018, Myrick went to another provider, Dr. Adam Lewis, who opined that Myrick had a right labral tear with a large para-labral cyst. He performed Myrick's first bilateral sacroiliac joint injection on January 25, 2018.[1] Thereafter, Myrick saw Dr. Greg Wood on January 26, 2018, for a second opinion as to Dr. Lewis's findings. Dr. Wood's records reflect that Myrick's biggest complaint was bilateral buttock pain, which was greater on her right side than on the left side. He represented to Myrick that she would be contacted with the results and a plan of care; however, Myrick did not seek additional treatment from

---

[1] Dr. Lewis did not treat Myrick again until January 8, 2019, when he performed a microdiscectomy of her L4-L5 spinal segments.

2

Dr. Wood following this visit.

¶5. In February 2018, Myrick went to Dr. Leonel Vance for treatment. Dr. Vance's records indicate that Myrick sustained an acute L-1 compression fracture and an S2-S3 sacrum bruising of the bone. Dr. Vance noted that Myrick was unable to return to work due to the severity of her pain. Myrick returned for follow-up visits on February 19, 2018; March 19, 2018; and May 2, 2018. In Dr. Vance's records from each of those visits, he noted that Myrick was unable to return to work due to the severity of her pain.

¶6. On August 1, 2018, Myrick saw Dr. Vance again, and during this visit, Dr. Vance's notes opined that maximum medical improvement (MMI) would be addressed after Myrick participated in aqua therapy. He noted Myrick's representation that she had no option to return to work with light-duty restrictions at UMMC. Myrick returned to Dr. Vance on August 28, 2018, and the medical records indicate that she told Dr. Vance she was able to take a cruise to Alaska and described her limitations during the vacation, but she also reported that she had not yet returned to work. Dr. Vance found that Myrick should continue to remain off work due to her difficulty walking and maintaining a straight posture for more than 100 feet. Myrick went back to Dr. Vance on November 5, 2018, and his visit notes state that he encouraged her to consider returning to work if she experienced pain relief from a steroid injection she was scheduled to receive the following month. He noted that hypothetically he would then give her sedentary work-duty restrictions with options for multiple breaks to sit, walk around, and stand and an instruction of no lifting over ten

3

pounds, as well as a handicapped parking option. Dr. Vance's notes indicate that Myrick agreed with his plan.

¶7.     On January 7, 2019, Myrick reported to the emergency room claiming she lost motor function in her left lower extremity. An MRI revealed that she had a ruptured disc in her back, and Dr. Lewis performed a left L4-L5 microdiscectomy at that time.

¶8.     Thereafter, Myrick returned to Dr. Vance on March 6, 2019. Dr. Vance's notes indicate that Myrick "underwent a left L4-L5 microdiscectomy during the first week of January 2019 with Dr. Adam Lewis at Merit Health Crossgates - unrelated to her original injury." His notes also state that Myrick requested a release to go back to work on March 18, 2019, and Dr. Vance released her to return to work with sedentary duty restrictions. On April 18, 2019, Myrick presented to Dr. Vance again and represented that despite her happiness to return to work, "the company will not allow her to return without restrictions." Despite Dr. Vance's release to return to work, the records show that he also wrote an excuse for Myrick from May 23, 2019, to June 18, 2019, excusing her from work while she remained under his care. Dr. Vance concluded in his excuse letter that Myrick should remain off work due to her worker's compensation injury.

¶9.     In August 2019, Myrick underwent an "Employer Medical Evaluation" with Dr. Jeffrey Summers. Dr. Summers opined that the microdiscectomy procedure was not related to Myrick's work injury from the previous year. Subsequently, Myrick saw Dr. Vance on November 19, 2019, at which time Dr. Vance placed Myrick at MMI and requested a

4

functional capacity examination (FCE). Although Dr. Vance placed Myrick at MMI on November 19, 2019, he issued Myrick a work excuse from November 19, 2019, to January 21, 2020.

¶10. On December 17, 2019, Myrick underwent her first FCE. The record indicates Myrick was unhappy with the response and comments made in the FCE and requested a second FCE. Specifically, the FCE noted that Myrick did not demonstrate a full and consistent effort in the examination. When Myrick returned to Dr. Vance on January 21, 2020, she continued to report that UMMC would not allow her to return to work with any restrictions. Myrick underwent a second FCE in May 2020, which represented that the results of her testing now indicated her true capacity. This second FCE listed her work classification as medium. Further, Dr. Vance responded to a questionnaire in July 2020 and noted that Myrick was released at MMI on November 19, 2019, and adopted medium work-duty restrictions for Myrick as found in the FCE.

¶11. Myrick continued to return to Dr. Vance for various follow-up visits through 2020. On December 2, 2020, Myrick saw Dr. Vance, and the medical records show he wrote her a medical excuse letter excusing her from work from that date until January 21, 2021.

¶12. Myrick filed a petition to controvert with the MWCC disputing the nature and extent of her injury. A hearing was held on March 8, 2021. Subsequently, the administrative judge (AJ) rendered a decision on June 10, 2021, finding, among other things, that Myrick failed to perform an adequate job search and, therefore, failed to ultimately prove she is entitled to

permanent disability benefits. The AJ also found that Myrick failed to meet her burden of proof to establish that the surgical procedure performed by Dr. Lewis was related to the work injury and therefore determined that UMMC, Myrick's employer, is not financially responsible for the procedure. The Worker's Compensation Commission subsequently affirmed the AJ's order. Myrick appeals from this order.

## STANDARD OF REVIEW

¶13. "It is well-settled law in this State that the Commission is the ultimate finder of fact in workers' compensation cases, and where substantial credible evidence supports the Commission's decision, then, absent an error of law, the decision must stand without judicial interference." *Harris v. Stone Cnty. Bd. of Supervisors*, 270 So. 3d 989, 992 (¶7) (Miss. Ct. App. 2018) (quoting *Logan v. Klaussner Furniture Corp.*, 238 So. 3d 1134, 1138 (¶11) (Miss. 2018)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred.'" *Univ. of Miss. Med. Ctr. v. Smith*, 909 So. 2d 1209, 1218 (¶29) (Miss. Ct. App. 2005) (quoting *Cent. Elec. Power Ass'n v. Hicks*, 236 Miss. 378, 389, 110 So. 2d 351, 357 (1959)).

## DISCUSSION

¶14. "'Disability' is defined as an 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which . . . must be supported by medical findings.'" *Howard Indus. Inc. v. Satcher*, 183 So.

6

3d 907, 912 (¶13) (Miss. Ct. App. 2016) (quoting Miss. Code Ann. § 71-3-3(i) (Rev. 2011)). "This definition refers to an occupational disability rather than to a medical disability," *Lifestyle Furnishings v. Tollison*, 985 So. 2d 352, 359 (¶18) (Miss. Ct. App. 2008), and "comprises a physical injury coupled with a loss of wage-earning capacity." *Satcher*, 183 So. 3d at 912 (¶13). "The claimant bears the burden of proving the existence of a disability and its extent," *Harris*, 270 So. 3d at 993 (¶9), and "[t]he Commission must evaluate the extent of any disability by considering the evidence as a whole." *Tollison*, 985 So. 2d at 360 (¶25).

## I. Permanent Total Disability

¶15. Myrick's first issue on appeal is actually two-fold: (1) whether the evidence presented by UMMC was sufficient to overcome the presumption that she was permanently and totally disabled, and (2) if so, whether Myrick met her burden to prove a loss of wage-earning capacity and show that she is entitled to permanent disability benefits.

¶16. A claimant "injured in the course and scope of [his] employment is entitled to compensation to the extent that he has been incapacitated to earn wages." *Harris*, 270 So. 3d at 993 (¶9) (quoting *Tollison*, 985 So. 2d at 359 (¶18))." The claimant has the burden of proof to make out a prima facie case for disability" by establishing a loss of wage-earning capacity. *Delphi Packard Elec. Sys. v. Brown*, 6 So. 3d 1091, 1095-96 (¶20) (Miss. Ct. App. 2008) (quoting *Thompson v. Wells-Lamont Corp.*, 362 So. 2d 638, 641 (Miss.1978)).[2] "Once

---

[2] "Factors which should be considered in determining loss of wage-earning capacity 'include the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related

7

the claimant establishes a prima facie case, . . . the presumption of total disability" arises. *Tollison*, 985 So. 2d at 360 (¶22).

¶17. As an initial matter, we note that neither party takes issue with the determination that Myrick established a prima facie case that she was permanently and totally disabled based on her testimonial evidence that UMMC failed to rehire her, which raised a rebuttable presumption of permanent total disability.

¶18. After the claimant establishes a prima facie case, "the burden of proof shifts to the employer to rebut or refute the claimant's evidence." *Brown*, 6 So. 3d at 1095-96 (¶20). The employer may satisfy its burden and "rebut the presumption of total disability by showing that the claimant only suffered a partial disability or no loss of wage-earning capacity." *Tollison*, 985 So. 2d at 360 (¶22).

¶19. A claimant's "degree of disability is assessed" according to "the employee's post-injury capacity to earn wages in the open labor market." *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1165 (¶19) (Miss. Ct. App. 2010). A permanent and *total* disability is "dependent on a claimant's showing of a *total* loss of wage-earning capacity[.]" *Scott v. KLLM Inc.*, 37 So. 3d 713, 715 (¶11) (Miss. Ct. App. 2010) (emphasis added). As such, "[t]he employer may rebut this presumption by pointing to 'all the evidence concerning wage-earning capacity, including education and training which the claimant has

---

circumstances.'" *Tollison*, 985 So. 2d 352, 360 (¶25) (Miss. Ct. App. 2008) (quoting *McGowan v. Orleans Furniture Inc.*, 586 So. 2d 163, 167 (Miss. 1991)).

8

had, his age, continuance of pain, and any other related circumstances[,]'" to show that the claimant is capable of regular employment in the labor market. *Smith v. Howard Indus. Inc.*, 271 So. 3d 744, 780 (¶14) (Miss. Ct. App. 2018) (quoting *Meridian Prof'l Baseball Club v. Jensen*, 828 So. 2d 740, 747 (¶21) (Miss. 2002)). The claimant's "ability to earn post-injury wages, even significantly diminished post-injury wages, defeats a claim of permanent *total* disability." *Price v. Omnova Sols. Inc.*, 17 So. 3d 104, 108 (¶11) (Miss. Ct. App. 2009).[3]

¶20.    Here, Myrick's evidence supporting her prima facie case of permanent total disability primarily consisted of her testimony, which included the following: after her injury, UMMC would not reinstate her employment because of her work restrictions; she was restricted from lifting over ten pounds, climbing stairs, and walking distances; and these restrictions prevented her from performing the substantial and usual acts of her employment with UMMC and in the field of nursing. The evidence that Myrick presented to prove her loss of wage-earning capacity consisted principally of the fact that UMMC had refused to allow her to return to work since her injury. *See McCray v. Key Constructors Inc.*, 803 So. 2d 1199, 1203 (¶14) (Miss. Ct. App. 2000).

¶21.    To rebut the presumption of permanent and total occupational disability, UMMC established that Myrick was ultimately given medium work-duty restrictions, which were less stringent than she alleged. UMMC also presented evidence from a vocational expert that

---

[3] "[T]he post-injury capacity to earn wages at other employment, even at a diminished level, is enough to defeat a claim for permanent total disability." *Hill v. Mel Inc.*, 989 So. 2d 969, 972 (¶13) (Miss. Ct. App. 2008).

showed Myrick was capable of regular employment and that her background made her an excellent candidate for a plethora of medically related positions within her medium work-duty restrictions. These positions included Medical Case Manager, Nurse Consultant, Telephonic Case Manager, Chief Nursing Officer, Nurse Recruiter, Perioperative Marketing Director, Utilization Review Coordinator, and Industrial Health Nurse. As such, we find substantial credible evidence in the record to support the Commission's conclusion that Myrick was not totally disabled and that UMMC had rebutted the presumption.

¶22. Furthermore, "[i]n order to be deemed permanently totally disabled under Mississippi Code Annotated section 71-3-17(a) (Rev. 2000), a claimant must show something more than an inability to return to the job existing at the time of injury." *Howard Indus.*, 271 So. 3d at 779 (¶12).[4] "The Mississippi Supreme Court has held that:

> If the injury prevents the employee from resuming his former trade, work or employment, this alone is not the test of disability to earn wages or the test of the degree of such disability, but the definition relates to loss of capacity in "the same or other employment, and the meaning is that the employee . . . must seek employment in another or different trade to earn his wages."

*Smith v. Masonite Corp.*, 48 So. 3d 565, 571 (¶21) (Miss. Ct. App. 2010) (quoting *Sardis Luggage Co. v. Wilson*, 374 So. 2d 826, 828 (Miss. 1979)). "A finding that the claimant has not pursued alternate forms of work with sufficient diligence is grounds to deny a claim of total disability." *Leflore Cnty. Bd. of Supervisors v. Golden*, 169 So. 3d 882, 886 (¶10) (Miss.

---

[4] The record from the Commission further indicates that she was also working part-time in some capacity as a bookkeeper for her husband's business in the period of time following her workplace injury.

Ct. App. 2014) (quoting *McCray*, 803 So. 2d at 1203 (¶17)).

¶23. Based on the record before us, we find sufficient evidence that Myrick did not adequately pursue alternative employment after UMMC allegedly refused to reinstate her. The Commission's finding was supported by substantial credible evidence and the Commission acted within its discretion by denying permanent disability benefits to Myrick.

## II. Causal Connection

¶24. The second issue on appeal is whether Myrick established that the L4-L5 microdiscectomy performed by Dr. Lewis the following year after her injury, in 2019, was causally connected to her work injury. Myrick claims that the procedure was the result of her work injury and alleges that Dr. Vance's medical records support finding the procedure was causally connected.

¶25. "In *Cole v. Superior Coach Corporation*, another back-injury case, this Court stated that '[t]he issues with reference to an alleged injury of this type are properly within the province of medical experts. In all but the simple and routine cases, it is necessary to establish medical causation by expert testimony.'" *Short v. Wilson Meat House LLC*, 36 So. 3d 1247, 1253 (¶30) (Miss. 2010) (citing *Cole v. Superior Coach Corp.*, 234 Miss. 287, 291, 106 So. 2d 71, 72 (1958)). This Court has previously explained:

> To establish entitlement to benefits under workers' compensation law, the claimant bears the initial burden of proving by a preponderance of the evidence each element of the claim of disability. . . . Unless common knowledge is sufficient, medical evidence must prove the existence of the disability and its causal connection to the employment. . . . The evidence used to prove the causation must be credible medical evidence and not mere

11

speculation. . . . Also, the medical evidence must be based upon a reasonable degree of medical probability.

*City of Jackson v. Sandifer*, 125 So. 3d 681, 688 (¶27) (Miss. Ct. App. 2013) (citations and internal quotation marks omitted). "Our law requires that an injured worker must support her claim of disability with medical findings." *Dep't of Health/Ellisville State Sch. v. Stinson*, 988 So. 2d 933, 936 (¶10) (Miss. Ct. App. 2008) (internal quotation marks omitted). "[M]edical evidence must prove not only the existence of a disability but also its causal connection to employment." *Clark v. Spherion Corp.*, 11 So. 3d 774, 778 (¶16) (Miss. Ct. App. 2009).

¶26. A thorough review of the record in this case supports the Commission's findings that most of Myrick's evidence seeking to place financial responsibility on UMMC for this specific procedure comes from her personal testimony of the pain she was in and the relief provided by the surgery. Consistent with the findings of the Commission, the records of Dr. Vance do not offer sufficient affirmative medical evidence to causally connect the subsequent microdiscectomy to her original work injury. In fact, medical records of the other doctors, such as Dr. Summers's entry dated October 12, 2019, explicitly state the opposite and present findings that the microdiscectomy performed by Dr. Lewis was not causally connected to Myrick's work injury. Consequently, we find substantial credible evidence supports the Commission's ruling that Myrick failed to meet her burden of proof to establish that the microdiscectomy was causally connected by medical evidence, and, therefore, UMMC is not financially responsible for that procedure.

12

**CONCLUSION**

¶27. The evidence before us on appeal reflects that the Commission's ruling denying permanent and total disability benefits and finding that Myrick failed to establish a causal connection between the microdiscectomy and the original work injury are supported by substantial credible evidence in the record. Thus, we affirm the order of the Mississippi Worker's Compensation Commission.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE AND EMFINGER, JJ., CONCUR. WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**